PEOPLE *v.* KARSTE.

1. CRIMINAL LAW—INFORMATION—EXAMINATION.

An information need not be wholly based upon the complaint or warrant, but it may charge the offense disclosed at the preliminary examination.

2. SAME—MISAPPROPRIATION OF MONEY BY AGENT.

A broker who, having received a check and written instructions to buy stock, did not buy, but deposited the check in a bank to his account, and spent the money, was rightly convicted under 3 Comp. Laws, § 11572.

3. SAME—AGENTS—BROKERS.

The word "agents," used in said statute, includes "brokers."

4. DEBTOR AND CREDITOR—PRINCIPAL AND AGENT—QUESTION FOR JURY.

Where a broker received a check in a letter, with instructions to use it in the purchase of certain stock, and replied that it had been placed to the credit of the principal, who subsequently canceled the order and directed the purchase of other stock, the question as to whether the relation of debtor and creditor existed between them was one of fact for the jury.

5. MISAPPROPRIATION OF FUNDS—EVIDENCE—FINDING OF JURY.

On October 13th, respondent received by mail a check for $350, with instructions to buy certain stock. He deposited the check in a bank to his credit, and on November 14th received instructions to cancel the first order and buy other stock. At times between October 13th and November 14th his bank account amounted to less than $350. *Held*, that as the bank account on November 16th was $932.16, and on that date the respondent wrote that he had entered the order to buy the other stock mentioned, the jury were justified in finding that he had the funds in his hands on November 14th.

Exceptions before judgment from Gogebic; Steere, J., presiding. Submitted November 20, 1902. (Docket No. 217.) Decided March 23, 1903.

Otto E. Karste was convicted of misappropriating money placed in his hands for investment. Affirmed.

*Charles E. Miller*, for appellant.

*Horace M. Oren*, Attorney General, and *Samuel S. Cooper*, Prosecuting Attorney (*Allan F. Rees*, of counsel), for the people.

MONTGOMERY, J. The respondent was convicted under an information based on section 11572 of the Compiled Laws. On the trial the evidence showed the following facts: Cecil S. Wray, in October and November, 1900, resided at Iron Belt, Wis., about nine miles from the city of Ironwood, and on the 13th of October he wrote a letter to the respondent as follows:

"Mr. O. E. KARSTE,
          "Ironwood, Mich.
" *Dear Sir:* I inclose you my mother's check for $350, and desire you to please buy for her four shares National Biscuit preferred stock at 87 or better. When the stock is bought, kindly have certificate made to my mother, Mrs. Eliza Wray, and oblige,
                    "Yours very truly."

Inclosed in such letter was a check upon the Savings & Trust Company, Cleveland, Ohio, payable to O. E. Karste or bearer, for $350, on deposit, and the number 9,187, which check was signed "Mrs. Eliza Wray." The testimony showed that this money was Mrs. Eliza Wray's money, and that Cecil S. Wray received from Karste a reply to his letter of October 13th, which is as follows:

                    "IRONWOOD, MICH., October 16, 1900.
"C. S. WRAY, Esq.,
          "Iron Belt, Wis.
" *Dear Sir:* I have your favor of the 13th inst., inclosing check for $350, which amount I have placed to your

credit.  I have entered an open order to buy four shares of National Biscuit preferred at 87, and issue certificate to Mrs. Eliza Wray, of Iron Belt, Wis.   Thanks.
                                        "Yours truly."

Aside from these letters, there was no communication between Cecil S. Wray and Karste previous to November 13th; but Wray was in Ironwood once or twice during that time, and asked Karste if he had been able to procure the stock for his mother.   Wray merely asked him if he had the stock, and he would say "No," and they would probably converse upon something else for a minute or two.   The next communication between the parties was a telegram dated November 13th, and sent from Edinburgh, Ind., which telegram was as follows:

                "EDINBURGH, IND., November 13, 1900.
"O. E. KARSTE,
        "Ironwood, Mich.:
    "Cancel Biscuit order, and buy four shares American Steel & Wire preferred at 85 or better.
                                        "C. S. WRAY."

Wray also wrote Karste on the 14th of November as follows:

                "325 EIGHTEENTH ST., LOUISVILLE, KY.,
                        "November 14, 1900.
"Mr. O. E. KARSTE,
        "Ironwood, Mich.
    "*Dear Sir:* I wired you tonight as follows:   'Cancel Biscuit order, and buy four shares American Steel & Wire preferred at 85 or better.'   When you have purchased stock, please have certificate made to Mrs. Eliza Wray, and mail to me at above address.   Also cancel my. C. & H. order, and mail check to balance account.   It is too high for me.
                                        "Yours truly."

Wray received from Karste, in reply to this telegram and letter, a letter as follows:

                "IRONWOOD, MICH., November 16, 1900.
"C. S. WRAY, Esq.,
        "Louisville, Ky.
    "*Dear Sir:* I am in receipt of your wire of the 13th

and your letter of the 14th, instructing me to cancel your order to buy four shares of Biscuit preferred and also the Cal. & Hec., and in its place to buy four shares of American Steel & Wire preferred at 85 or better. I have entered an open order at this price. The market opened at 85 yesterday morning, which was the lowest for the day, and you are aware that to buy an odd lot like this it would have to sell at about 84½ before your order could be executed at 85. On execution of the order I will, as directed, issue the certificate to Mrs. Eliza Wray, together with statement and check for balance. You will please write and give me your mother's address, that is, her home, which is always necessary to give when certificates are issued. On receipt of your wire yesterday I wrote you to Edinburgh, Ind., thinking it would reach you there. Do I understand that you want a check for the $100 now, regardless of the execution on the other?

"Yours truly."

In response to this last letter Wray wrote the respondent that he need not send check until final settlement was made, or until after respondent had purchased the American Steel & Wire Company stock. This letter was written November 20th, but before that day respondent had left Ironwood and gone to New York; and the next information that Wray received was a letter from respondent's attorney, stating that he had failed, and proposing a settlement by note.

The case was put to the jury under two counts of the information, each of which counted upon a conversion of the $350 in violation of the instructions given in the telegram of November 13th, and confirmed by the letter of November 14th. A motion was made to quash the information on the ground that the offense embodied in the information was not set out in the complaint and warrant under which respondent was arrested. It has been frequently held by this court that the information need not be wholly based upon the facts stated in the complaint or warrant, but that the prosecutor has a right to describe the offense as it is disclosed by the facts appearing upon the preliminary examination. *Brown* v. *People*, 39 Mich. 37; *People* v. *Pichette*, 111 Mich. 461 (69 N. W. 739).

It is next urged that the relations of the respondent to the complaining witness were not such as to make him subject to prosecution under the statute in question. So far as we are advised, the statute has never received judicial construction in this State, nor has a similar statute been construed in any other State of the Union. The statute nearest analogous to the statute in question is the English statute (24 & 25 Vict. chap. 96, § 75), which provides that:

"Whosoever, having been intrusted, * * * as a banker, merchant, broker, attorney, or other agent, with any money or security for the payment of money, with any direction in writing to apply, pay, or deliver such money or security, or any part thereof, respectively, or the proceeds, or any part of the proceeds, of such security, for any purpose or to any person specified in such direction, shall, in violation of good faith, and contrary to the terms of such direction, in any wise convert to his own use or benefit, or the use or benefit of any person other than the person by whom he shall have been so intrusted, such money, security, or proceeds, or any part thereof respectively, * * * shall be guilty of a misdemeanor."

Under this statute, it was held that where a stockbroker, who had received an order to buy stock, together with a check for "cover and commission," did not buy, but paid the check into his bank, and spent the money, he was rightly convicted. *Reg.* v. *Cronmire*, 54 L. T. (N. S.) 580. See, also, *Reg.* v. *Christian*, L. R. 2 C. C. 94. The language of our statute differs, it is true, from the English statute, in that it does not name brokers. But it does employ the word "agents," which is comprehensive enough to include brokers, and we think the purpose is similar to that of the English statute. This is not a statute to punish embezzlement, but to protect persons who place in charge of another funds for control or investment, accompanied by specific instructions, and, we think, is broad enough to cover the relation of principal and broker, unless there should be something in the relations of the

parties, or in their dealings, which indicates a purpose to create the relation of debtor and creditor.   Whether this was the purpose in the present case was, in our view, at most, a question of fact for the jury, and this question was fairly submitted to the jury by the trial judge.

Respondent's counsel earnestly insists that by reason of respondent's letter to Wray, stating that he had placed the $350 to Wray's credit, the inference must be drawn that it was the purpose to create the relation of debtor and creditor.   We do not so construe this statement.   It would be a very proper proceeding, if the money were to be treated as the money of the prosecutor, for the respondent to have kept some account of it, and to have entered a credit upon his books.   It is in the nature of a special deposit or trust, and the fact that a memorandum of it, or a credit for the amount of the deposit, was entered upon the respondent's books, did not change the character of the deposit.

It is next contended that the evidence shows that there could not have been a misappropriation of this money at any time after the 13th of November and before the 3d of December, the date when the demand was made.   The argument appears to be this : That as the respondent's bank account shows that this money was deposited in October in his bank account, and that at times between that date and November 13th his bank account amounted to less than $350, it cannot be inferred that this money was on hand at the time of the commission of November 13th and 14th.   The answer to this contention may be found in the fact that on the 16th of November respondent replied to the letter and telegram, stating that he had entered an open order at the price stated, and we think the jury would be justified in treating this as an admission that he still had the funds in his hands with which to carry out the instruction.   It also appears that on this date he had in the bank, subject to his check, $932.16.   If he had drawn this money out at any time, but replaced it, and had it on hand at the time the instructions were received, the violation of his instructions, under the circumstances necessary to constitute the offense, would make him equally guilty.

The questions discussed dispose of the meritorious contentions in the case. We are constrained to hold that there is no error to the prejudice of the respondent, and, while a different result might have been reached by the jury, we are not able to say that there is not sufficient testimony to support the finding in all respects.

The conviction is affirmed, and the court below directed to proceed to judgment.

The other Justices concurred.