[Crim. No. 3411. In Bank.—May 28, 1931.]

THE PEOPLE, etc., Respondent, v. OWEN R. BIRD, Appellant.

Cooper & Collings, John S. Cooper, David Welts and Louis Guernsey for Appellant.

Henry G. Bodkin, Joseph W. Ryan and Bodkin & Lucas, *Amici Curiae* for Appellant.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, Tracy Chatfield Becker and George Pensy, Deputies District Attorney, for Respondent.

Walter K. Tuller, Earl Warren, District Attorney, and Nathan Harry Miller, Deputy District Attorney, *Amici Curiae* for Respondent.

SHENK, J.—The defendant was convicted of manslaughter. He appeals from the judgment and from an order denying his motion in arrest of judgment.

By a complaint filed in the municipal court of the city of Los Angeles, the defendant was charged with the crime of the murder, on November 26, 1929, of Percival Graham Watson. After a preliminary examination the magistrate concluded that a felony had been committed, that there was reasonable cause to believe that the defendant had committed it, and held the defendant to answer in the superior court for the crime of manslaughter. In due time the district attorney filed an information charging the defendant with the crime of manslaughter. Thereafter the district attorney, before trial, requested the permission of the court to amend the information so as to charge the defendant with murder. The application was denied. Following the denial of a second motion to amend, the district attorney moved to dismiss the information with permission to file in the municipal court a new complaint charging murder. The motion was granted and the new complaint was filed in the municipal court charging murder. A second preliminary examination was held at which, by stipulation, the transcript of the testimony taken at the former preliminary hearing was submitted to another judge of the municipal court for his action thereon. Again the magistrate held the defendant to answer

for manslaughter. The district attorney then filed an information charging the defendant with murder. A motion by the defendant to set aside the information on the ground (1) that the defendant had not been legally committed and (2) that the offense of murder was not shown by the evidence taken at the preliminary hearing to have been committed, was made and denied. A plea of not guilty was entered and the cause went to trial, resulting in a verdict of guilty of the crime of manslaughter.

The first assault made on the judgment is that it is void for the reason that the district attorney was without lawful authority to file an information charging an offense different from that named in the order of commitment. The contention is predicated upon the alleged unconstitutionality of section 809 of the Penal Code as amended in 1927 wherein, in the last sentence of the section, the district attorney is permitted to charge in the information ''the offense, or offenses, named in the order of commitment or any offense, or offenses, shown by the evidence taken before the magistrate to have been committed''. It is asserted that this amendment is violative of section 8 of article I of the Constitution of 1879, which provides: ''Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law. A grand jury shall be drawn and summoned at least once a year in each county.''

At the outset it may be stated that no contention is or can be made that the foregoing amendment of section 809 is lacking in due process of law, for it has been definitely settled in *Lem Woon* v. *Oregon,* 229 U. S. 586 [57 L. Ed. 1340, 33 Sup. Ct. Rep. 783], that the provision of the Constitution of the state of Oregon which permitted the prosecuting attorney to file his own affidavit of probable cause, without providing for any examination or commitment by a magistrate, did not violate the due process clause of the federal Constitution. Since this state might therefore in the Constitution dispense with a preliminary examination entirely and authorize the district attorney to initiate a criminal prosecution in the superior court by his own affidavit of probable cause, the amendment of said section 809 does no violence to the federal Constitution. It is

then to be considered whether the amendment is contrary to our own constitutional provision above quoted.

■ There is considerable discussion as to what portion of said section 8 of article I the words "as may be prescribed by law," therein contained, have application. It is contended by the defendant that these words authorize the legislature to prescribe the procedure for indictment only. The prosecution and supporting *amici curiae* contend that these words have application equally to proceedings by information. In our opinion these words do not place a restriction upon the legislature in providing the necessary framework for prosecution by either method. There is nothing in the constitutional section which would compel or authorize a contrary conclusion, and there would appear to be every reason why the legislature should be free to provide procedure consistent with constitutional requirements applicable both to indictment and information. With or without these words, the constitutional section is not self-executing as to the procedure to be followed by either method in bringing the accused to trial.

Prior to the amendment of 1927, section 809 contained no definite authority for the district attorney to file an information charging an offense shown by the evidence taken before the magistrate and not designated in the order of commitment. Without specific legislative authority therefor this court in the earlier cases recognized and approved the power of the district attorney so to do. (*People* v. *Lee Ah Chuck,* 66 Cal. 662 [6 Pac. 859]; *People* v. *Vierra,* 67 Cal. 231 [7 Pac. 640]; *People* v. *Giancoli,* 74 Cal. 642 [16 Pac. 510].) Later, in 1904, the power of the district attorney in this respect came before the court for consideration in the case of *People* v. *Nogiri,* 142 Cal. 596 [76 Pac. 490], wherein it was held that the power of the district attorney under section 809, as it then stood, was confined to the filing of an information charging the offense designated in the order of commitment as the "such offense" then prescribed by the section, and the earlier cases above noted were overruled. The Nogiri case was followed by the District Courts of Appeal in the cases of *Ex parte Fowler,* 5 Cal. App. 549 [90 Pac. 958], *People* v. *Danford,* 14 Cal. App. 442 [112 Pac. 474], *People* v. *Hudson,* 35 Cal. App. 234 [169 Pac. 719], and *People* v. *Bomar,* 73 Cal. App. 372 [238 Pac. 758], the case last cited having been decided in 1925.

Since the amendment in 1927 of said section 809, the question of the constitutionality of the amendment was presented in the case of *People* v. *Sanders,* 102 Cal. App. 237 [283 Pac. 136], and was decided contrary to the contentions of the defendant herein, by holding the amendment of 1927 to be constitutional. The question was again presented in *People* v. *Linton,* 102 Cal. App. 608 [283 Pac. 389]. In that case it was held that although the trial court committed no error in refusing to set aside the information charging two offenses different from that upon which the defendant had been held to answer, for the reason that the relief sought in the trial court was belated, nevertheless the court, because of the nature of the offense and the punishment therefor, considered the points made on appeal with reference to the effect of section 8 of article I of our Constitution on the 1927 amendment of said section 809 and concluded that the contentions were without merit.

In *People* v. *Barnett,* 99 Cal. App. 409 [278 Pac. 885], the defendant was committed for the crime of rape. The district attorney added a second count to the information charging lewd and lascivious conduct, a crime shown to have been committed by the evidence taken at the preliminary examination but not named in the order of commitment. The defendant was acquitted of the crime of rape and found guilty of the offense charged in the second count, a charge admittedly more serious than that of rape because of no possibility of a county jail sentence thereunder. A motion to set aside the information as to the second count was denied. The District Court of Appeal held that the district attorney had acted within his rights under section 809 of the Penal Code, and that the defendant had suffered no violation of his constitutional rights.

A somewhat analogous situation was presented by reason of the amendment of section 1008 of the Penal Code in 1911 (Stats. 1911, p. 436), wherein it was provided that an information might be amended by the district attorney, without leave of court, at any time before plea, and further providing that an amendment could not be so made "as to charge an offense not shown by the evidence taken at the preliminary examination". It has been recognized on numerous occasions that the information might be amended by the district attorney under that section subject to the limitation that the information may not be amended so as to charge

an offense not shown by the evidence taken at the preliminary examination. (See *People* v. *Foster*, 198 Cal. 112 [243 Pac. 667] ; *People* v. *Hinshaw*, 194 Cal. 1 [227 Pac. 156] ; *People* v. *Shope*, 77 Cal. App. 427 [245 Pac. 998].)

█ It is confidently asserted by the defendant that the amendment of section 809 of the Penal Code is unconstitutional for the further reason that it is in contravention of section 1 of article II of the Constitution which divides the powers of the state government into three distinct departments, the legislative, the executive and the judicial. Further, that the grant of power to the district attorney by said amendment is an unlawful delegation of judicial power under section 1 of article VI of the Constitution, which designates where the judicial power of the state shall be reposed. These contentions are pressed because of certain language contained in the case of *People* v. *Nogiri, supra,* wherein it was said : ''The result of these decisions *(People* v. *Vierra, supra; People* v. *Lee Ah Chuck, supra,* and *People* v. *Christian* [101 Cal. 471, 35 Pac. 1043] *supra,)* is to vest in a ministerial and executive officer, the district attorney, supervisoral, appellate and judicial powers controlling the judgment of a judicial magistrate who alone, under the Constitution, is empowered to hold the examination, and alone is empowered to declare by his commitment the offense for which the accused person shall be put on trial. This, we think, the law neither contemplates nor permits.'' The decision then proceeds to hold that section 809 of the Penal Code, as it then existed, confined and limited the power of the district attorney to inform against the defendant only for the offense for which the magistrate had held him to answer. This holding need not now be questioned in view of the language of the then existing statute, which in and of itself would have been sufficient upon which to base a reversal of the judgment. To fortify the reason given for the holding, the court quoted, with approval, the language of the dissenting opinion of Mr. Justice Harlan in the case of *Hurtado* v. *California,* 110 U. S. 516, 553, 554 [28 L. Ed. 232, 4 Sup. Ct. Rep. 111, 292], which discussed the powers of the district attorney under the statute of this state. Whether the action of the district attorney in the Nogiri case, which had been authorized and approved in the earlier cases in this court above cited, was contrary to any constitutional provision of the state was a question

which obviously did not receive the consideration to which it was entitled and which no doubt would have been given to it if the discussion of the plan had been necessary to the decision in that case. The sections of the Constitution now relied upon by the defendant were not referred to in the decisions. It is to be assumed, however, that the court in the discussion had in mind the provisions of section 8 of article I. As has been seen, there is nothing in this section which would operate as a limitation upon the powers of the legislature to confer upon the district attorney the right to file an information charging any offense or offenses shown by the evidence taken at the preliminary examination to have been committed. It was enough that the statute in force at the time the Nogiri case was decided did not confer such power and by necessary implication precluded the exercise of such power.

It is then to be determined whether the amendment of section 809 in 1927 violates section 1 of article III or section 1 of article VI of the Constitution because of an unlawful delegation of judicial power to the district attorney. In what is to be said it is assumed that it would be incompetent for the legislature under the Constitution to confer any judicial power on the district attorney. Judicial power generally is the power to adjudicate upon the legal rights of persons or property, with reference to transactions or occurrences existing or already had and closed. It is the power to hear and determine controversies between adverse parties and questions in litigation.

In *Marin Water etc. Co.* v. *Railroad Com.*, 171 Cal. 706, this court said at pages 711 and 712 [Ann. Cas. 1917C, 114, 154 Pac. 864, 866]: "The judicial function is to 'declare the law and define the rights of the parties under it'. (*Frasher* v. *Rader,* 124 Cal. 133 [56 Pac. 797].) To determine 'what shall be adjudged or decreed between the parties, and with whom is the right of the case, is judicial action'. (*Rhode Island* v. *Massachusetts,* 37 U. S. (12 Pet.) 718 [9 L. Ed. 1233].) 'A determination of the rights of an individual under the existing laws' is an exercise of judicial power. (*Quinchard* v. *Board of Trustees,* 113 Cal. 669 [45 Pac. 856].) An essential element of judicial power, distinguishing it from legislative power, is that it requires 'the ascertainment of existing rights'. (*People* v. *Board of Supervisors,* 122 Cal. 421, 424 [55 Pac. 131].)

'It is not to be disputed that, as a general proposition, the judicial function is the determination of controversies between parties.' (*Title etc. Co.* v. *Kerrigan,* 150 Cal. 318 [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 90 Pac. 129] ; *Sinking Fund Cases,* 99 U. S. 761 [25 L. Ed. 504; 23 Cyc. 1620.) ''

Judicial power is not only the authority to decide but to make binding orders or judgments. No action which is merely preparatory to an order or judgment to be rendered by some different body can properly be termed judicial. (*Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, 412 [Ann. Cas. 1917E, 390, 156 Pac. 491] ; 5 Cal. Jur., p. 676.)

The action of the district attorney in filing an information based on the evidence taken at the preliminary examination does not satisfy the definition of judicial power under the foregoing cases or any definition of judicial power cited or discovered. Such action does not in any sense adjudicate the rights of the defendant. The information, like an indictment, is merely an accusatory paper and is to be considered as no more than a part of the method of putting the defendant on trial for the charge named therein. (See *People* v. *Brown,* 207 Cal. 172, 180 [277 Pac. 320].)

In preparing the information the district attorney unquestionably is called upon to consider the facts as they appear in the testimony taken at the preliminary examination. He must also draw conclusions from those facts in the light of the law applicable thereto in order that he may charge the defendant with the proper offense. But in so doing he does not exercise a judicial power within the scope of the nondelegable power of the judiciary. The fact that an administrative or executive officer may frequently be called upon to determine facts and apply the law to those facts does not of itself make him a judicial officer or confer upon him judicial power. (*Oceanic Steam Nav. Co.* v. *Stranahan,* 214 U. S. 320 [53 L. Ed. 1013, 29 Sup. Ct, Rep. 671] ; *Union Bridge Co.* v. *United States,* 204 U. S. 364 [51 L. Ed. 523, 27 Sup. Ct. Rep. 367].) For example, the commissioner of corporations and the superintendent of banks are officers of this state who exercise this administrative and executive power to a high degree but within

constitutional limitations. The function of the district attorney in drawing an information under the disputed portion of said section 809 is much more limited and circumscribed. He must be guided entirely by the testimony taken at the preliminary examination. If the defendant be committed without reasonable or probable cause he has his remedy in *habeas corpus* under subdivision 7 of section 1487 of the Penal Code. If he is informed against for an offense not shown by the evidence taken at the preliminary examination to have been committed, the superior court would undoubtedly have jurisdiction to set aside the information on that ground. In drafting the information the function of the district attorney is much the same as that of an attorney at the law who obtains a statement of the facts from his client and files a complaint in a civil action based on such statement, and upon which civil process issues as a matter of course, and the defendant is thus required to appear or suffer a default.

It is argued with much force that the function of the magistrate in conducting the preliminary examination and in issuing his order of commitment with the indorsement thereon is not strictly judicial in its nature. That it may properly be performed by a judicial officer cannot be doubted. But if a state may, consistently with due process, dispense with the preliminary examination entirely and authorize the prosecutor to initiate the criminal proceeding (*Lem Woon* v. *Oregon, supra*), it is difficult to perceive why the state should be denied the power through its legislature to authorize the district attorney to designate the crime to be laid in the information. Certainly section 8 of article I of our Constitution does not work such a denial for it does not provide that the magistrate shall have the power to designate the crime, much less the exclusive power to do so. When the magistrate has concluded that a crime has been committed and that there is sufficient cause to believe the defendant guilty thereof, he has performed his function under the common-law practice (*O'Campo* v. *United States,* 234 U. S. 91, 100 [58 L. Ed. 1231, 34 Sup. Ct. Rep. 712]), and has performed all that the Constitution of this state required of him. The fact that the legislature has required of him under section 872 of the Penal Code that he name the offense in the order of commitment and under section 877 of the same

code that the commitment state briefly the nature of the offense, is not to deny to the same legislative authority the power to say that the designation of the offense shall not be exclusively in the magistrate, but that the responsibility therefor shall devolve likewise and finally on the public officer who is charged with the duty of conducting the prosecution in the superior court. The American Law Institute, in its paintaking endeavor to formulate a uniform Code of Criminal Procedure to fit modern times has recommended a section on the subject as follows: ''Whenever an accused has been held to answer at a preliminary examination, whether he has been admitted to bail or committed to jail, the prosecuting attorney shall file an information charging the commission of an offense according to the evidence presented at such examination.'' (Code of Criminal Procedure, Am. Law Inst., 1928, 359, sec. 122.) It was said in *People* v. *Foster,* 198 Cal. 112, at page 122 [243 Pac. 667, 671], ''The whole system of procedure by information is subject to control and regulation by the legislature.'' While this statement must be considered in the light of and subject to the constitutional provison that there must be preliminary examination and commitment by a magistrate, the statement is applicable to the amendment of said section 809 now under attack, and we conclude that the defendant herein has suffered no impairment of his constitutional rights by reason thereof.

There is much discussion of the effect of the constitutional debates when section 8 of article I of the Constitution was under consideration. They have been examined and we find nothing therein which is persuasive of an intention on the part of the framers of the Constitution of 1879 to deny to the legislature the power to authorize the district attorney to charge in the information the offense or offenses shown by the evidence at the preliminary examination. It is apparent from these debates that there was a sharp conflict of opinion whether the power should be vested in the legislature to adopt either the grand jury system or prosecution by information. It was finally decided to continue the grand jury system and provide for the alternative method of prosecution by information preceded by an examination and commitment by a magistrate, the procedure in either case to be left to legislative control.

There are numerous cases in other jurisdictions cited and relied upon by both parties and by *amici curiae*. The procedure authorized by said section 809 is followed in New York (*People* v. *Spier,* 120.App. Div. 786 [105 N. Y. Supp. 741]; *People* v. *Hamilton,* 183 App. Div. 55 [170 N. Y. 705], affirmed in 230 N. Y. 577 [130 N. E. 900]); also in Wisconsin (*Porath* v. *State,* 90 Wis. 527 [48 Am. St. Rep. 954, 63 N. W. 1061].)

An early statute in Michigan provided that, except in certain specified cases, no information should be filed against any person for any offense until such person should have had a preliminary examination therefor, before a magistrate, or should waive such examination. In construing this statute in *Annis* v. *People,* 13 Mich. 511, Judge Cooley said: "The examination, under this statute, was designed, to some extent, to accomplish the purpose of a presentment by the grand jury under the law as it existed before, in protecting a party against being subject to the indignity of a public trial for an offense before probable cause had been established against him by evidence under oath. But it was never designed that the complaint or warrant before the magistrate should stand in the place of a formal presentment, nor that in the circuit court, the prosecuting officer should be limited by it in the mode of charging the offense. It is undoubtedly competent for him, so long as he does not undertake to proceed against a person for a different transaction than that to which the examination relates, to put his information in such form as, in his opinion, will enable him to try the offense on the merits, in the way most effectually to advance the ends of justice." This rule was followed and approved in the later case of *People* v. *Karste,* 132 Mich. 455 [93 N. W. 1081].

It is conceivable that the action of the district, attorney might be without the pale of the legislative sanction. For instance, if the defendant should be complained against for grand theft and be informed against for bigamy, because, forsooth, there might be testimony before the magistrate that the defendant was guilty of the latter crime, a serious problem might be presented. But no such question is presented here. Murder and manslaughter are both homicides. The latter is included in the former and is one or

the other, depending on the facts and circumstances attendant upon the killing. One transaction only is involved. Such is the situation in the present case.

The statute of Arizona has a constitutional provision similar in effect to section 8 of article I of our own Constitution. A statute was enacted in that state in all material respects the same as the last sentence of said section 809 of the Penal Code prior to its amendment in 1927. The Supreme Court of that state followed the construction of our statute as it then existed in the Nogiri case. (*Fertig* v. *State,* 14 Ariz. 540 [133 Pac. 99] ; *Solici* v. *State,* 21 Ariz. 592 [193 Pac. 19].)   It is interesting to note that in the Fertig case it was held that the magistrate was not bound to hold the defendant to answer for the offense named in the complaint, citing *People* v. *Staples,* 91 Cal. 23 [27 Pac. 523], and *People* v. *Wheeler,* 73 Cal. 255 [14 Pac. 796], wherein this court held to that effect.   The fact that, under established law, the defendant may be held to answer for an offense shown by the evidence taken at the preliminary examination, but not charged in the complaint, would seem to weaken the argument that the defendant is greatly prejudiced by being informed against for an offense shown by such evidence but not named in the order of commitment, so long as he is not proceeded against for a different transaction than that to which the examination relates. Cases holding in conformity with the Nogiri case are as follows: *State* v. *McGreevey,* 17 Idaho, 453 [105 Pac. 1047] ; *State* v. *Spaulding,* 24 Kan. 11; *Payne* v. *State,* 30 Okl. Cr. 218 [235 Pac 558] ; *State* v. *Boulter,* 5 Wyo. 236 [39 Pac. 883].   The Supreme Court of Kansas, however, in the later cases of *State* v. *Handrub,* 113 Kan. 12 [213 Pac. 827], and *State* v. *Miner,* 120 Kan. 187 [243 Pac. 318], appears to have relaxed the earlier rule in that state and has held in conformity with the earlier California cases.

An examination of the cases in other jurisdictions discloses at most that they are not altogether in harmony.   It is unnecessary to distinguish them.   In none of the cases cited or discovered by our own investigation was involved the effect of a statute specifically authorizing the prosecuting officer to file the information charging the offense or any offense shown at the preliminary examination to have been committed.   All of the cases relied upon by the

defendant were decided before any authorative declaration of the courts of this state had been made as to the effect of the 1927 amendment of section 809 of the Penal Code.

As to the merits of the case, it is contended by the defendant that the evidence is insufficient to support the verdict of manslaughter. It is insisted that the facts show an accidental killing and that as such it was neither murder nor manslaughter. A brief reference to the evidence will be sufficient to show that the contention is without merit.

The defendant was residing with his wife and family on Dahlia Street in the city of Los Angeles. On the evening of November 26, 1929, he returned to his house about 10:30 o'clock. Awaiting him on his arrival were his wife, who was sitting on a couch in the living-room, and the defendant's friend, the deceased, sitting on a chair near the end of the coach. The two, but especially the wife, began to upbraid the defendant for coming in late and under the influence of liquor. His reply was that he had been to a meeting and had there had a couple of drinks; that he was hungry and wanted something to eat. He then went to the kitchen, and made ready to get something to eat, being followed by his wife, who continued to chide him for having been drinking. Upon her refusal to stop ''arguing'' and to go out of the kitchen the defendant pushed her aside, whereupon the deceased came into the kitchen and a scuffle occurred in which the deceased struck the defendant on the chin. The defendant then said that if such was the treatment to be accorded him he was going to leave. The defendant gathered some of his clothing together, called a taxicab, and went to the home of a friend on Oxford Street, intending to spend the night there. The friend was not at home, so the defendant returned to his own place of residence. The wife and the deceased were still in the house, whereupon the defendant admonished the deceased to leave and go to his home. This direction was met with the reply that he, the deceased, intended to remain and protect Mrs. Bird. The defendant went to the bedroom, obtained a revolver, returned and said, ''Well, now, somebody better go home.'' The defendant then fired three or four shots, three of them taking effect in the body of the deceased. The first entered the left cheek, fractured the jawbone, passed downward and penetrated the third cervi-

cal vertebra. The second bullet entered the right shoulder from the back and made its exit at the armpit. The third and fatal shot entered the body two inches above and to the left of the navel, penetrated the abdomen and lacerated the small intestines in twelve places.

The defendant insisted that he thought the revolver was loaded with blank cartridges, that he fired the shots to force the deceased to leave, and that the killing was accidental. The jury was not bound to believe his story in view of all of the circumstances of the killing and might well have been justified in concluding that the offense committed was more serious than the one specified in the verdict.

The defendant complains of the refusal to give two of his requested instructions, numbers 4 and 14. The subject matter of No. 4 was to the effect that the law in its wisdom does not undertake to regulate the moral conduct of its subjects and that a verdict of not guilty should be returned if the jury should not be convinced of guilt of the crime charged, however reprehensible morally the conduct of the defendant might be found to be. No immoral conduct on the part of the defendant was charged by the prosecution or shown by the evidence, hence the instruction is inapplicable. Instruction No. 14 treated of justifiable homicide in defense of habitation. The court fully instructed the jury on the question of self-defense, the defense of family and accidental homicide. The charge was full, fair and complete, and no prejudice appears by the refusal to give the instruction complained of.

The judgment and order are affirmed.

Waste, C. J., Curtis, J., Richards, J., Langdon, J., and Seawell, J., concurred.

Rehearing denied.