166 Cal.App.4th 1519 (2008)
AUGUSTIN ROBERT QUINONES, Petitioner,
v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent; THE PEOPLE, Real Party in Interest.
No. D052665.
Court of Appeals of California, Fourth District, Division One.
September 22, 2008.
*1522 Charles M. Sevilla for Petitioner.
No appearance for Respondent.
Bonnie M. Dumanis, District Attorney, Catherine Stephenson, Laura E. Tanney, Craig E. Fisher and James E. Atkins, Deputy District Attorneys, for Real Party in Interest.

OPINION
McCONNELL, P. J.
Petitioner Augustin Robert Quinones seeks a writ of prohibition restraining respondent court from proceeding further on torture and attempted murder counts, which the district attorney charged for the first time in an amended information filed approximately five months after the preliminary hearing. The primary question presented by this petition is whether these charges unfairly surprised Quinones and thus deprived him of substantial preliminary hearing rights. We conclude the torture charge unfairly surprised Quinones, but the attempted murder charge did not. Accordingly, we grant the petition as to the torture charge.

FACTUAL AND PROCEDURAL BACKGROUND
Following a road rage incident, the district attorney filed a felony complaint charging Quinones with assault with a deadly weapon by means of *1523 force likely to produce great bodily injury (assault). (Pen. Code, § 245, subd. (a)(1)).[1] The complaint also alleged Quinones had personally used a deadly weapon (his vehicle) (§§ 1192.7, subd. (c)(23), 12022, subd. (b)(1)), personally inflicted great bodily injury (§ 12022.7, subd. (a)) and willfully inflicted great bodily injury and torture (§ 1203, subd. (e)(3)).
Approximately six months after the district attorney filed the felony complaint, the court conducted a preliminary hearing. At the hearing, Troy Shramek testified he was driving himself and his wife, Christine Davis, home from work in their sports utility vehicle (SUV). He came to a three-way intersection near their home where he intended to turn left. He let an oncoming car pass through the intersection and then started the turn. He does not recall whether he signaled the turn on this occasion, but he usually does. As he was turning, Quinones started driving a commercial van through the intersection into his path. Shramek turned his SUV sharply to avoid a collision and stopped the SUV in front of the van.
Quinones also stopped the van and started yelling, swearing, and making offensive hand gestures at Shramek. The two men got out of their vehicles and engaged in a heated discussion that included bumping chests and exchanging epithets. Davis then got out of the SUV, retrieved her cell phone, and stated she was calling the police. This defused the situation and the two men went back to their vehicles. Shramek believed Quinones was going to allow him to have the right of way. However, as Quinones got back into his van, he told Shramek, "I'll show you."
Shramek thought Quinones's remark meant Quinones intended to damage his SUV. Consequently, Shramek positioned himself near the front left of the SUV to force Quinones to take a wide berth around it. Quinones repositioned the van so that it was aimed at Shramek and not the SUV. Quinones then "floored it," driving the van directly into Shramek. Shramek instinctively put his hands up to brace himself. The van knocked him back a few feet, causing him to lose his balance and go underneath the van. To protect his head, he flung his upper body toward the middle of the van.
Shramek subsequently lost consciousness and does not remember anything that happened while he was underneath the van. When he regained consciousness, he sat up by the curb and discovered his clothes were shredded, his face and left leg were bleeding, and his ribs and left leg were broken. He has since undergone three surgeries and now requires a cane to walk. He has scars on *1524 his head, waist, left leg, and left ankle and may need hip replacement surgery in the future.
Larry Loeser came upon the scene after Quinones had reentered the van. Loeser testified he saw Shramek standing in the road arguing with Quinones. Although the van had a clear path through the intersection, Shramek attempted to stop the van from proceeding by stomping his foot, putting his hands up, stepping in front of the van, and laying his hands on the van's hood. Quinones stepped on the gas pedal, causing the van to lurch forward in what Loeser interpreted as a warning for Shramek to get out of the way.
Shramek stayed in front of the van. The van lurched forward again and Shramek slid toward the passenger side of the van. Quinones then revved the van's engine and the van moved forward. Shramek "crumbled underneath" the van and the van's front passenger tire went over Shramek's legs and stomach area. The van paused for a moment, powered up again, and then the van's rear passenger tire went over Shramek. The van passed through the intersection and pulled over. Quinones got out of the van and waited.
Quinones's counsel did not offer any affirmative evidence at the hearing and neither party orally argued the matter. At the conclusion of the hearing, the court held Quinones to answer for the assault charge without comment.
Shortly after the preliminary hearing, the parties stipulated the felony complaint would serve as the information. Approximately five months later, a different prosecutor, after reviewing the case in preparation for trial, filed an amended information adding a charge of torture (§ 206; count 1) and an attempted murder charge (§§ 187, subd. (a), 664; count 2) to the original assault charge (§ 245, subd. (a)(1); count 3). Both the attempted murder charge and the assault charge included the same enhancement allegations. The amended information increased Quinones's maximum sentence exposure from eight years in prison to life in prison.
Quinones filed a combination statutory (§ 995) and nonstatutory motion to dismiss the torture and attempted murder charges. Quinones argued he had not been legally committed because adding unforeseen charges to the information after the preliminary hearing deprived him of substantial preliminary hearing rights. In addition, he argued his counsel provided ineffective assistance at the preliminary hearing by failing to anticipate and defend against the charges. Lastly, he argued the evidence presented at the preliminary hearing did not establish probable cause to believe he had committed either offense.
*1525 The court denied the motion, finding no merit to any of Quinones's arguments. Quinones filed this petition, seeking a writ to restrain the court from proceeding further on the torture and attempted murder charges. We conclude Quinones has not been legally committed on the torture charge and grant the petition as to this charge.[2]

DISCUSSION

I.

Role of Preliminary Hearings and Defendant's Preliminary Hearing Rights
(1) The purpose of the preliminary hearing is to determine whether there is probable cause to believe the defendant has committed a felony. (§ 866, subd. (b); People v. Brice (1982) 130 Cal.App.3d 201, 209 [181 Cal.Rptr. 518].) The hearing operates as a judicial check on prosecutorial discretion and is designed to relieve the defendant of the humiliation and expense of a criminal trial on groundless or excessive charges. (People v. Superior Court (Mendella) (1983) 33 Cal.3d 754, 759 [191 Cal.Rptr. 1, 661 P.2d 1081] (Mendella); People v. Herrera (2006) 136 Cal.App.4th 1191, 1202, 39 Cal.Rptr.3d 578.)
A defendant has several substantial rights at the preliminary hearing. These rights include the right to confront prosecution witnesses and the right to present evidence at the hearing to negate an element of an offense, to impeach prosecution evidence, or to establish an affirmative defense. (§§ 865, 866, subd. (a); Jennings v. Superior Court (1967) 66 Cal.2d 867, 875, 880 [59 Cal.Rptr. 440, 428 P.2d 304]; Mitchell v. Superior Court (1958) 50 Cal.2d 827, 829 [330 P.2d 48].) If a defendant is deprived of substantial preliminary hearing rights and is not successful in remedying the deprivation by a timely motion to dismiss, the defendant is entitled to a writ of prohibition upon proper request. (Jennings v. Superior Court, supra, 66 Cal.2d at pp. 870-871, 880-881.)

II.

Charges in Information Limited by Preliminary Hearing Evidence and Magistrate's Findings
(2) Although a preliminary hearing is prompted by the filing of a criminal complaint, the complaint does not limit the offenses for which the *1526 magistrate may hold a defendant to answer. "[I]t is not the complaint but the totality of the evidence produced at the preliminary hearing which notifies the defendant of the potential charges he may have to face [at trial]." (People v. Donnell (1976) 65 Cal.App.3d 227, 233 [135 Cal.Rptr. 217].) Accordingly, a magistrate may hold the defendant to answer for the offense charged in the complaint or any other offense shown by the evidence presented at the preliminary hearing. (§ 866, subd. (b); People v. Brice, supra, 130 Cal.App.3d at p. 209.)
Similarly, the information filed by the district attorney following the preliminary hearing may charge the defendant with the offense identified in the magistrate's commitment order or any other offense shown by the evidence presented at the preliminary hearing. (§ 739; People v. McGee (1947) 31 Cal.2d 229, 234 [187 P.2d 706].) Nonetheless, to protect a defendant's state constitutional right to a preliminary hearing, any new offense charged in the information must arise out of the same transaction as the offense for which the magistrate committed the defendant. (Jones v. Superior Court (1971) 4 Cal.3d 660, 664-665 [94 Cal.Rptr. 289, 483 P.2d 1241].) The district attorney may amend the information subject to this same limitation. (§ 1009; People v. Tallman (1945) 27 Cal.2d 209, 214 [163 P.2d 857].)
If a defendant anticipates the possibility the information will include a previously uncharged offense, the defendant may request the magistrate determine there is insufficient evidence to hold him to answer for the offense. (People v. Brice, supra, 130 Cal.App.3d at pp. 208, 210.) If the magistrate makes this determination and the magistrate's underlying factual findings are fatal to the conclusion the offense was committed, the district attorney may not charge the offense in the information. (Pizano v. Superior Court (1978) 21 Cal.3d 128, 133 [145 Cal.Rptr. 524, 577 P.2d 659].)

III.

Charges in Information May Not Unfairly Surprise Defendant
(3) Despite these safeguards, courts have explicitly and implicitly recognized there may be instances when the inclusion of a new offense in the information genuinely surprises a defendant and thus deprives the defendant of substantial preliminary hearing rights. (See, e.g., People v. Bird (1931) 212 Cal. 632, 644-645 [300 P. 23]; People v. Tallman, supra, 27 Cal.2d at p. 213; People v. Manning (1982) 133 Cal.App.3d 159, 168 [183 Cal.Rptr. 727]; People v. Brice, supra, 130 Cal.App.3d at p. 207; People v. Donnell, supra, 65 *1527 Cal.App.3d at p. 233; People v. Barnett (1929) 99 Cal.App. 409, 413 [278 P. 885].) In determining whether such an unfair surprise has occurred, courts consider the similarities and differences between the new offense and the offense for which the magistrate committed the defendant. (People v. Bird, supra, 212 Cal. at pp. 644-645; People v. Manning, supra, 133 Cal.App.3d at pp. 167-168.) In addition, courts consider whether the new offense is palpable from the evidence presented at the preliminary hearing and whether defense counsel knew or anticipated the district attorney might charge the new offense. (People v. Brice, supra, 130 Cal.App.3d at pp. 207-208; Talamantez v. Superior Court (1981) 122 Cal.App.3d 629, 635 [176 Cal.Rptr. 800]; People v. Donnell, supra, 65 Cal.App.3d at p. 232; People v. Barnett, supra, 99 Cal.App. at pp. 412-413.) Courts also consider the length of time between the preliminary hearing and the charging of the new offense and how defense counsel's tactics at the preliminary hearing would have differed had defense counsel known or anticipated the new offense. (People v. Brice, supra, 130 Cal.App.3d at pp. 207-208; Talamantez v. Superior Court, supra, 122 Cal.App.3d at p. 635; People v. Donnell, supra, 65 Cal.App.3d at pp. 231-232.)

IV.

Torture Charge Unfairly Surprised Defendant
(4) Applying these factors, we conclude the torture charge unfairly surprised Quinones. Although assault under section 245, subdivision (a)(1) and torture both have a great bodily injury component, the two crimes differ in significant respects. Assault requires the defendant's actions to have been willful, rather than accidental. However, the crime does not require the intent to use force against someone or to hurt someone. The crime does not even require anyone to have been hurt. It is sufficient if the defendant's actions were likely to produce great bodily injury. (§ 245, subd. (a)(1); CALCRIM No. 875.)
Conversely, torture requires the defendant to have actually inflicted great bodily injury. The crime also requires an intent to cause cruel or extreme pain and suffering for revenge, extortion, persuasion, or a sadistic purpose. (§ 206; CALCRIM No. 810.) Because of the necessary mental state, torture is considered an especially aggravated crime. (People v. Barrera (1993) 14 Cal.App.4th 1555, 1569 [18 Cal.Rptr.2d 395].) Consequently, torture has a much greater penalty than assault. In this case, the potential penalty for the assault charge, including related enhancements, is eight years in prison. *1528 (§§ 245, subd. (a), 12022, subd. (b)(1), 12022.7, subd. (a).) The potential penalty for the torture charge is life in prison. (§ 206.1.)
The primary evidence relied upon by the district attorney to show Quinones had the requisite mental state to warrant charging him with torture is the "I'll show you" remark. From our review of the preliminary hearing transcript, the prosecutor appears to have offered this evidence to show Quinones's conduct was not accidental and to explain why Shramek did not stay out of the way until Quinones cleared the intersection. Considered in context, the remark did not make the prospect of a torture charge palpable.
(5) The district attorney argues for the first time in the return that the probation ineligibility enhancement allegation contained in the complaint/original information provided notice of the possibility of a torture charge.[3] We disagree. Notwithstanding the conjunctive language used in the allegation, the enhancement applies when there has been either the willful infliction of great bodily injury or torture. (§ 1203, subd. (e)(3).) Given the nature of the assault charge and the absence of a torture charge in the complaint, defense counsel had no reason to expect this enhancement allegation was based on anything other than willful infliction of great bodily injury.
Moreover, while the requirements for torture do not preclude its application to road rage incidents, we have been unable to locate any reported case in which this has occurred. In addition, the original prosecutor assigned to the case never identified torture as a possible charge. Instead, almost a year after the incident and more than five months after the preliminary hearing, the charge was first identified by the prosecutor assigned to the case for trial. Under these circumstances, we cannot conclude defense counsel should have reasonably anticipated the charge.
From a tactical perspective, defense counsel states he would have handled the preliminary hearing much differently had he been aware of or anticipated the possibility of a torture charge being added to the information. Specifically, he would have orally argued the matter instead of simply submitting it. He would have cross-examined Shramek more vigorously about the "I'll show you" remark. He would have attempted to impeach Shramek on this point with evidence that neither Shramek nor his wife mentioned the "I'll show you" remark when recounting the incident for police officers. Rather, Shramek mentioned the remark for the first time in a radio interview some *1529 time after the incident. Lastly, he would have attempted to obtain factual findings from the magistrate to preclude the district attorney from charging the crime.[4]
(6) While Quinones can present this same evidence at trial, the fulfillment of a defendant's trial rights does not necessarily remedy the loss of a defendant's preliminary hearing rights. Often the most important function of the preliminary hearing is the opportunity it provides the defendant to eliminate excessive charges. (Mendella, supra, 33 Cal.3d at p. 759.) The more serious the charge, the more burdensome it is for the defendant to stand trial and the greater tactical advantage the prosecution has in any plea negotiations. (Id. at pp. 759-760, quoting Graham & Letwin, The Preliminary Hearings in Los Angeles: Some Field Findings and Legal Policy Observations (1971) 18 UCLA L.Rev. 635, 742-743; People v. Bird, supra, 212 Cal. at pp. 640-644.) Because defense counsel could not have reasonably anticipated the torture charge, Quinones had no opportunity at the preliminary hearing to challenge its basis and attempt to eliminate it. Therefore, he has been deprived of substantial preliminary hearing rights and has not been legally committed on this charge. (Jennings v. Superior Court, supra, 66 Cal.2d at pp. 874, 880-881.)

V.

Attempted Murder Charge Did Not Unfairly Surprise Defendant
(7) Applying the same factors, we conclude the attempted murder charge did not unfairly surprise Quinones. Attempted murder requires the intent to kill someone and at least one direct, but ineffective, step toward the killing. (§§ 21a, 187, subd. (a), 663, 664; CALCRIM No. 600.) Unlike torture, the crime does not require the defendant to have a particular motivation, such as revenge or extortion. The crime simply requires the defendant to have desired the victim's death. (People v. Smith (2005) 37 Cal.4th 733, 739-740 [37 Cal.Rptr.3d 163, 124 P.3d 730].)
Because attempted murder requires a greater criminal intent than assault, the potential penalty is greater. In this case, the potential penalty for the *1530 attempted murder charge, including related enhancements, is 13 years in prison. (§§ 664, subd. (a), 12022, subd. (b)(1), 12022.7, subd. (a).) This is five years more than the potential penalty for the assault charge, but far less than the potential life in prison penalty for the torture charge.
While we were unable to locate any reported cases in which torture had been charged in connection with a road rage type incident, we were able to locate cases in which attempted murder had been charged. (See, e.g., People v. Oropeza (2007) 151 Cal.App.4th 73 [59 Cal.Rptr.3d 653]; People v. Le (2006) 137 Cal.App.4th 54 [39 Cal.Rptr.3d 741]; People v. Linares (2003) 105 Cal.App.4th 1196 [129 Cal.Rptr.2d 882].) Moreover, the prospect of an attempted murder charge was far more palpable from the preliminary hearing evidence than the prospect of a torture charge. In addition to the "I'll show you" remark, Shramek testified Quinones aimed the van at him, "floored it," and ran right through him. Similarly, Loeser testified Quinones caused the van to lurch twice to warn Shramek to get out of the way. Quinones then revved the van's engine, drove over Shramek with the front passenger tire, paused, revved the van's engine, and drove over Shramek with the back passenger tire. Based on this evidence, we cannot conclude the prospect of an attempted murder charge was too remote for defense counsel to have reasonably anticipated it.
We are also not persuaded defense counsel would have necessarily employed different tactics at the preliminary hearing had he anticipated the attempted murder charge. Given Loeser's testimony and the low evidentiary threshold for holding a defendant to answer, any effort by defense counsel to preempt an attempted murder charge could have had the opposite result. It is unlikely defense counsel would have taken this risk since the difference between the potential penalties for assault and attempted murder is relatively modest.
Finally, Quinones has not established defense counsel provided ineffective assistance by failing to anticipate the attempted murder charge because Quinones has not established this failure prejudiced him. (Strickland v. Washington (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 104 S.Ct. 2052]; People v. Weaver (2001) 26 Cal.4th 876, 961 [111 Cal.Rptr.2d 2, 29 P.3d 103].) Even without Shramek's testimony regarding the "I'll show you" remark, there was sufficient evidence presented at the preliminary hearing to hold Quinones to answer for attempted murder. Therefore, it is not reasonably probable defense counsel would have been able to obtain factual findings precluding the district attorney from pursuing this charge.

*1531 DISPOSITION
Let a peremptory writ of prohibition issue restraining respondent court from proceeding further on count 1 (torture) of the amended information. In all other respects, the petition is denied. The stay issued by this court on April 23, 2008, is vacated.
McDonald, J., and Aaron, J., concurred.
NOTES
[1] Unless otherwise stated, all statutory citations are to the Penal Code.
[2] In his reply brief, Quinones acknowledges the granting of this petition would not prevent the district attorney from filing a new complaint charging him with torture. Nothing in our decision is intended to preclude the district attorney from pursuing this course.
[3] The allegation states, "And it is further alleged [Quinones] is ineligible for probation in that he/she willfully inflicted great bodily injury and torture in the perpetration of the above crime, within the meaning of PENAL CODE SECTION 1203(e)(3)."
[4] These statements were made in declarations submitted with Quinones's moving and reply papers below. For the first time in the return, the district attorney objects to this evidence and the other evidence Quinones submitted with the moving and reply papers. As the objection was not raised below, the objection is waived. (Evid. Code, § 353, subd. (a); Jurcoane v. Superior Court (2001) 93 Cal.App.4th 886, 890-891, fn. 3 [113 Cal.Rptr.2d 483].)