[Crim. No. 1553. First Appellate District, Division Two.—December 16, 1929.]

THE PEOPLE, Appellant, v. JOSEPH FYFE, Jr., Respondent.

U. S. Webb, Attorney-General, Lionel Browne, Deputy Attorney-General, Matthew Brady, District Attorney, and William W. Murphy, Assistant District Attorney, for Appellant.

Maxwell McNutt for Respondent.

NOURSE, J.—The state appeals from a judgment of dismissal entered after defendant's demurrer was allowed to a second amended information.

On June 15, 1928, an information was filed charging the defendant with the crime of obtaining $3,000 by false pretenses. This information alleged that on or about the eighth day of July, 1925, the defendant made certain representa-

tions to Max L. Rosenfeld as to his ownership of stocks and contracts, some of which were alleged to have been false, and that relying upon said representations the said Rosenfeld delivered to the defendant the sum of $3,000. A demurrer to this information was sustained upon the authority of *People* v. *Canfield*, 28 Cal. App. 792 [154 Pac. 33], and other cases holding that an information is insufficient when it fails to show a causal connection between the payment of the money and the representation.

Leave to amend having been granted, the district attorney on August 11, 1928, filed an amended information framed in two counts, the first charging grand theft of the sum of $15,000, in the language of section 484 of the Penal Code, as amended in 1927 [Stats. 1927, p. 1046], and the second count charging the offense of obtaining $15,000 by false pretenses. A demurrer to the first amended information was also sustained with leave to amend, and on June 10, 1929, the district attorney filed his second amended information which was also framed in two counts. The first count charged grand theft and the second obtaining money under false pretenses. To this information the defendant demurred and also filed a motion to set it aside. The demurrer and the motion were heard at the same time and on July 10, 1929, the court made its order allowing the demurrer as to both counts, and denying defendant's motion to set aside the information. At the time the order allowing the demurrer was made in open court the district attorney gave oral notice of appeal therefrom. Thereafter formal judgment was entered reciting that the demurrer was heard upon the ground that the second amended information did not state facts sufficient to constitute a public offense and that it attempted to charge an offense not shown by the evidence taken at the preliminary examination and ordering the dismissal of the proceedings and the discharge of the defendant. It would appear that the state assumes that its appeal was taken from the judgment as the order is not an appealable one under the provisions of section 1238 of the Penal Code. We assume this to be the position because no point is raised as to the notice of appeal and the record presented by the state contains a complete bill of exceptions of all the evidence taken before the committing magistrate

as well as a record of the evidence before the grand jury. This evidence has been brought up in an endeavor to meet the objection to the second amended information which charges an offense the evidence of which was not taken at the preliminary examination, and in the briefs the state concedes that there are but two issues presented on the appeal, one whether the information charges a public offense, and the second whether the offense charged is one not shown by the testimony at the preliminary examination.

Such being the case, all questions relating to the sufficiency of the original and first amended informations and the question of the application of the statute of limitations may be disregarded because if the second amended information attempts to charge an offense not shown by the evidence taken at the preliminary examination it should not have been filed. ▆ This follows from the express provisions of section 1008 of the Penal Code, declaring that an information "cannot be amended" so as to charge an offense not shown by the evidence taken at the preliminary examination. Therefore, disregarding the question whether this issue can be raised by a demurrer to an amended information and treating the question as one which comes to us on an appeal from the final judgment of dismissal we are confronted with the question whether this judgment should be affirmed or reversed.

▆ Inasmuch as the trial court has jurisdiction to enter a judgment of dismissal, it is incumbent upon the state on this appeal to show that that judgment was error which has resulted in a miscarriage of justice. Thus, again, assuming that the appeal was properly taken from the final judgment of dismissal, that judgment must be affirmed unless the appellant is able to show that some error has crept into the judgment which has resulted in a miscarriage of justice.

▆ The rights of the defendant in a case of this kind are statutory. Section 8 of article I of the Constitution provides that offenses "shall be prosecuted by information, after examination and commitment by a magistrate or by indictment. . . . " Section 1008 of the Penal Code, as it read in 1880, provided that when a demurrer was allowed to an indictment the trial court might direct the case to be resubmitted to the grand jury or direct a new information

to be filed, provided that after the order of resubmission the defendant may be examined before a magistrate. In 1911 this section was amended, adding the proviso that an information could not be amended so as to charge an offense not shown by the evidence taken at the preliminary examination. The clear purpose of these enactments is to give the accused a preliminary hearing either before a grand jury or before a committing magistrate, and to deny to the district attorney the right to force a defendant to trial before a jury upon an information which is not within the scope of the evidence taken.

The case presented here on the part of the respondent is that the second amended information states a charge not disclosed by the evidence in that it purports to charge that the defendant procured a loan of $15,000 from Rosenfeld through false representations as to his assets and false promises that they were sufficient to insure the repayment of the loan at its maturity, and that said loan would be repaid at maturity out of such assets. Now the undisputed and conceded facts as developed at the preliminary examination are that no such transaction occurred at all, but on the other hand the admitted facts are that Rosenfeld and defendant were lifelong friends who had been associated in numerous business transactions and that for some time prior to July, 1925, defendant had frequently informed Rosenfeld of his financial difficulties and that he had suggested to Rosenfeld the organization of a new corporation for the purpose of carrying on the business of selling lumber on commission. The defendant informed Rosenfeld that $15,000 would be needed for this purpose; that the defendant was obligated to such an extent that $7,500 would have to be used immediately for the payment of outstanding indebtedness, and that the remaining $7,500 would be needed to finance any accounts which would have to be carried while the business was being started. Numerous letters were exchanged between the parties, all showing unmistakably that Rosenfeld knew the financial condition of the defendant, and notwithstanding such condition he planned to go into business with him. The arrangements for the loan were evidenced by the written offer and acceptance dated July 7, 1925, which reads as follows:

"San Francisco, July 7, 1925, Tuesday.

"Mr. Max Rosenfeld,

"San Francisco, California.

"Dear Sir: In consideration of your advancing $15,000, of which $7,500 is to be retained in the company and $7,500 paid out on old accounts which we wish to pay, it is understood that the writer will give you his one-day note, at six per cent up to $15,000, or whatever amount is advanced, and insurance policies up to $20,000. We will incorporate a company in which you will have one-third of the stock and the writer will have two-thirds of the stock, but he will put his two-thirds of the stock up as collateral security on the above note. It is understood that you are to draw $300 monthly salary as an official and the writer is to draw $600 monthly salary as an official, and that we are to keep the overhead expense as low as possible. All dividends on all stock up to $15,000 to be applied to liquidate the above mentioned note and interest before any other dividends are paid out, and meanwhile the writer will keep up the premiums personally on the insurance in your favor. Neither party is to dispose of his stock without the consent of the other, and this agreement to be binding on their heirs for six years from date. In the event of any difference of opinion, same to be left to Mr. Henry Rosenfeld to settle, and his decision to be final.

"Yours very truly,

"JOSEPH F. FYFE, Jr.

"J. F. S.

"Accepted: MAX ROSENFELD."

In explanation of the writing, testimony was given by the complaining witness Max Rosenfeld and by Henry Rosenfeld, his brother, showing that the insurance policies mentioned in the writing and the defendant's share of the stock in the company to be incorporated were the only collateral ever suggested or contemplated as security for the loan. The evidence indisputably shows that the defendant did not at any time suggest or offer to put up any of his other assets as security for the loan, but on the other hand there is not so much as a conflict in the evidence that the complaining witness entered into this business agreement with the defendant fully informed as to the conditions and with the ex-

pectation of repayment out of the profits of the corporation which was to be formed.

In face of this uncontradicted evidence it is inconceivable that a district attorney should allege that the defendant represented and promised "all of said shares of stock and contracts and the values thereof and the said indebtedness to him, the said Joseph Fyfe, Jr., was and were and would be security to said Max L. Rosenfeld for the repayment of said loan at its maturity; that each and all of the said shares of stock and said contracts and agreements and the said indebtedness to him the said Joseph Fyfe, Jr., were then and there such that the said loan of fifteen thousand dollars ($15,000) *might and could be repaid therefrom* by him, the said Joseph Fyfe, Jr., to said Max L. Rosenfeld, *at the maturity* of said loan, and said Joseph Fyfe, Jr., did then and there request of said Max L. Rosenfeld a loan in the sum of fifteen thousand dollars ($15,000) *upon the security aforesaid.*" The vice of the pleading is particularly patent from the fact that the maturity of the loan was evidenced by a one-day note whereby the written contract of the parties provided for the future payments out of the profits of the corporation to be formed.

The procedure followed in this case is concrete evidence of the purpose and wisdom of the provisions of section 1008 of the Penal Code, which expressly prohibit an amendment to an information which would prejudice the substantial rights of the defendant. In declaring that an information "cannot" be amended so as to charge an offense not shown by the evidence taken at the preliminary examination the terms of the section are mandatory. They are in whole harmony with the provisions of section 8 of article I of the Constitution requiring an examination and commitment by a magistrate as a prerequisite to the filing of an information by the district attorney. We had occasion to consider the provision of the code in *Mitchell* v. *Superior Court,* 76 Cal. App. 734, 737 [245 Pac. 1109], where it is said that where the information fails to plead some material element in the alleged offense which goes to the substantial rights of the defendant "no amendment, in the proper use of that expression, can be made." But in such a case "the statute provides that the trial court may order the cause resub-

mitted to the grand jury, and in that event the statute authorizes the prosecuting officer so to proceed as to get another indictment returned or cause another examination to be held and later file another information. (*People* v. *Cockrill*, 62 Cal. App. 22 [216 Pac. 78, 81].) But in no proper sense can it be said that when the second pleading comes in it is within the contemplation of the statute an amended indictment or an amended information, but it is a new indictment or a new information.''

There is some argument in the briefs to the point that because of recent amendments to sections 484 and 952 of the Penal Code the first count in the amended information charging grand theft is sufficient and that, therefore, the demurrer to that count should have been overruled. If the information contained the first count of grand theft only there would be some merit to the point, but the pleading contained the allegation that ''the offense set forth in the second count of this information is a different statement of the same offense set forth in the first count hereof.'' Because of this allegation we must read the first count as pleading the offense of grand theft under the particular facts and circumstances set forth in the second count. It is not a question, therefore, of the sufficiency of the pleading to state a public offense against this defendant. The sole question which we pass on is the propriety of the judgment of dismissal which was based upon the ground that the amended information pleaded an offense not shown by the evidence taken at the preliminary examination but was filed contrary to the provisions of the code, and that there was, therefore, no information before the court upon which the defendant could be tried.

Judgment affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 31, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 13, 1930.

All the Justices concurred.