[Crim. No. 1994. Second Appellate District, Division Two.—February 23, 1932.]

THE PEOPLE, Respondent, v. OWEN E. WYATT, Appellant.

Bodkin & Lucas for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, Buron Fitts, District Attorney, and Frank Stafford, Deputy District Attorney, for Respondent.

CRAIG, J.—Prior to the sixth day of July, 1928, the appellant was charged by complaint, and pursuant to a preliminary examination was held to answer to the superior court upon three counts of grand theft. On said date the district attorney of Los Angeles County filed and caused him to be arraigned upon an information charging said three offenses, and, in addition thereto, five other crimes of grand theft shown by the evidence adduced at the preliminary hearing to have been committed by said defendant, and also charging a prior conviction of a felony, which latter charge is not contested. Count number 7 of the information charged that the defendant "did unlawfully take away notes secured by trust deeds, of the value of five thousand dollars, gold coin of the United States, the personal property of

Opal Dempster''. Thereafter the appellant pleaded not guilty, demurred generally and specially, and moved to set aside several counts of the information, including count number 7, upon the ground that the evidence taken at the preliminary examination did not show said offense to have been committed by the defendant, and that the committing magistrate had not embraced it in the commitment. Following adverse rulings upon these contentions, the defendant was tried and found guilty of the offenses charged in the first, third and seventh counts, he appealed, and was by this court granted a new trial because of irregularity in the entry of said plea. (*People* v. *Wyatt*, 101 Cal. App. 396 [281 Pac. 629].) Upon a second trial he was found guilty by a jury upon the charge of grand theft alleged in said count numbered 7. Motions for a new trial and in arrest of judgment were interposed, which were denied, and the instant appeal was taken from the rulings upon said motion and from the judgment.

By section 8, article I, of the Constitution, it is provided as follows: ''Offenses heretofore required to be prosecuted by indictment shall be prosecuted by . information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law. A grand jury shall be drawn and summoned at least once a year in each county.''

Section 809 of the Penal Code, as amended in 1927, ordained that an information ''may charge the offense, or offenses, named in the order of commitment, or any offense, or offenses, shown by the evidence taken before the magistrate to have been committed''. And section 1008 of the same code forbids amendment of an information ''so as to charge an offense not shown by the evidence taken at the preliminary examination''.

Primarily, appellant advanced the contention that said sections of the Penal Code did not contemplate the charging of an offense shown by the evidence taken at the preliminary examination, except when named in the commitment, and as to which it could legally be said that a defendant had had his day in court previously to commitment; and that if subject to broader construction they were in conflict with the above-mentioned provisions of the Constitution. That the sections of the code in question are

constitutional, and that an offense shown by the evidence taken at the preliminary examination, though not embraced in the commitment, may by appropriate proceedings when so supported be incorporated in an information, has since been decided. (*People* v. *Jensen,* 82 Cal. App. 489 [255 Pac. 781]; *People* v. *Barnett,* 99 Cal. App. 409 [278 Pac. 885]; *People* v. *Fyfe,* 102 Cal. App. 549 [283 Pac. 378]; *People* v. *Bird,* 212 Cal. 632 [300 Pac. 23, 25]; *People* v. *Sanders,* 102 Cal. App. 237 [283 Pac. 136]; *People* v. *Linton,* 102 Cal. App. 608 [283 Pac. 389].)

At the preliminary examination Mrs. Dempster testified fully as to the transaction in controversy. It there appeared, as upon each of the trials in the superior court, that in response to an advertisement of the defendant that he dealt in collateral loans, mortgages and trust deeds, the complaining witness obtained from him a loan of $800, and deposited with him as collateral security for repayment of said sum a trust deed and note upon which about $4,400 was payable to her. She testified that Wyatt also obtained her signature to a document which he represented to her as necessary to the proper conducting of his business, that he might thereby negotiate loans with others, and enforce collection of payments due on loans made, as well as an evidence of guarantee that her trust deed and note would be returned to her. Briefly, it developed that she had executed a bill of sale and option permitting the defendant to hold the securities for a period of one year, at the end of which time if the $800 loan should be repaid he might exercise the option of returning said trust deed and note, or paying her the proceeds of sale thereof within ten days; that he did in fact sell them, for $3,853.86, and that when demand was made for the papers deposited as security their return was refused, and that they were found to have been in the hands of the original maker. Mrs. Dempster swore that she had stated to the defendant that she did not desire to part with title to the securities.

It is the appellant's contention that as distinguished from *People* v. *Bird, supra,* and other authorities holding said sections of the Penal Code constitutional and sanctioning the allegation by information of offenses not included in those presented by the complaint, the instant case involves an offense independent, separate and distinct in itself, based

upon a different transaction, since the defendant had not been afforded a preliminary examination thereon and was not advised of the charge upon which he was to be called for trial. We are unable to find in decisions rendered since the amendment of the Penal Code in 1927 an authorization of such limited construction of sections 809 and 1008, which, as observed, recite that an information "may charge the offense, or offenses, . . . shown by the evidence taken before the magistrate to have been committed", and forbidding amendment thereof "so as to charge an offense not shown by the evidence taken at the preliminary examination". In *People* v. *Bird, supra,* it is said: "At the outset it may be stated that no contention is or can be made that the foregoing amendment of section 809 is lacking in due process of law, for it has been definitely settled in *Lem Woon* v. *Oregon,* 229 U. S. 586 [57 L. Ed. 1340, 33 Sup. Ct. Rep. 783] (affirming 57 Or. 482 [107 Pac. 974, 112 Pac. 427]), that the provision of the Constitution of the state of Oregon which permitted the prosecuting attorney to file his own affidavit of probable cause, without providing for any examination or commitment by a magistrate, did not violate the due process clause of the federal Constitution. Since this state might therefore in the Constitution dispense with a preliminary examination entirely and authorize the district attorney to initiate a criminal prosecution in the superior court by his own affidavit of probable cause, the amendment of said section 809 does no violence to the federal Constitution." In the same decision, in discussing the scope of section 8, article I, of the California Constitution, it is further said: "If the defendant be committed without reasonable or probable cause he has his remedy in *habeas corpus* under subdivision 7 of section 1487 of the Penal Code. If he is informed against for an offense not shown by the evidence taken at the preliminary examination to have been committed, the superior court would undoubtedly have jurisdiction to set aside the information on that ground. In drafting the information the function of the district attorney is much the same as that of an attorney at law who obtains a statement of the facts from his client and files a complaint in a civil action based on such statement, and upon which civil process issues as a matter of course, and the defendant is thus required to

appear or suffer a default. . . . But if a state may, consistently with due process, dispense with the preliminary examination entirely and authorize the prosecutor to initiate the criminal proceeding (*Lem Woon* v. *Oregon, supra*), it is difficult to perceive why the state should be denied the power through its legislature to authorize the district attorney to designate the crime to be laid in the information. Certainly section 8 of article I of our Constitution does not work such a denial for it does not provide that the magistrate shall have the power to designate the crime, much less the exclusive power to do so. When the magistrate has concluded that a crime has been committed and that there is sufficient cause to believe the defendant guilty thereof, he has performed his function under the common-law practice (*Ocampo* v. *United States,* 234 U. S. 91, 100 [58 L. Ed. 1231, 34 Sup. Ct. Rep. 712]), and has performed all that the Constitution of this state required of him. The fact that the legislature has required of him under section 872 of the Penal Code that he name the offense in the order of commitment and under section 877 of the same code that the commitment state briefly the nature of the offense, is not to deny the same legislative authority the power to say that the designation of the offense shall not be exclusively in the magistrate, but that the responsibility therefor shall devolve likewise and finally on the public officer who is charged with the duty of conducting the prosecution in the superior court.''

It is true that the crime here in question did not, as did that in *People* v. *Bird, supra,* arise out of the same transaction as those charged in the complaint or set forth in the commitment. It consisted of one of a series of alleged like offenses during a period of about two years, and was shown at the preliminary examination for the purpose of showing system and intent. While it is insisted that the defendant in *People* v. *Bird, supra,* was committed upon a charge of manslaughter and was informed against and tried upon a charge of murder, upon the same facts, whereas the appellant herein relies upon authorities holding that one may not be put to trial upon information of the district attorney without being first afforded a preliminary examination, we do not deem either of these situations analogous nor their ruling decisive in this respect. Decisions

other than the Bird case were rendered prior to the amendment of 1927, and in that case it is not apparent that the Supreme Court intended by its *dictum* to do . more than observe that "if the defendant should be complained against for grand theft and informed against for bigamy, because, forsooth, there might be testimony before the magistrate that the defendant was guilty of the latter crime, a serious problem might be presented". The testimony at the preliminary examination consisted of more than four hundred pages, permeated throughout with the most rigid cross-examination of witnesses and strenuous objections, involving successive similar transactions, each of which constituted in itself an offense under the Penal Code of this state. The crime here charged appeared to have been committed, and the preliminary examination was held, subsequently to the amendment which directs that an information "may charge the offense, or offenses . . . shown by the evidence taken before the magistrate to have been committed". As already seen, our Supreme Court has pronounced this legislation valid and as doing no violence to any provision of the Constitution of the United States and of this state. No statute or decision, prior or subsequent in date to the amendment of 1927 is directed to our attention, nor have we been able to find one, which attempts to prescribe enforcement of the law in disregard of mere form where it can be done without prejudice to the substantial rights of the defendant. The appellant was defended at every step by able counsel, and was afforded ample opportunity to confront the witnesses and to be heard. He was not informed against for an offense not shown by the evidence taken at the preliminary examination, nor is it suggested how, under any conception of the record, his substantial rights were or could have been prejudiced. A careful examination of the whole case impels us to conclude that under the Constitution and the statutes invoked there was not a miscarriage of justice through the mere omission to specifically charge the offense in the commitment.

 Based upon the assertion that the evidence "discloses without contradiction that Mrs. Dempster signed the contract, which on its face transferred the title to the defendant", it is contended that the evidence was insufficient to justify a conviction upon the charge of theft. Under an

allegation that the defendant did unlawfully take away notes secured by trust deeds of the value of $5,000, it appeared that the prosecution proceeded upon the theory that he loaned the sum of $800, sold the securities held as collateral for $3,853, kept the proceeds, and made no effort to deliver to Mrs. Dempster the securities or the proceeds of their sale when tendered repayment of said loan. Upon these hypotheses it is insisted that the judgment should be reversed because, appellant asserts, the evidence did not tend to establish bad faith in obtaining the documents, that Mrs. Dempster did not intend to part with title thereto, that they were obtained with felonious intent, or that the defendant did not in fact receive a voluntary transfer of the title to the same. The jury were instructed that if they should find from the evidence that "at the time Mrs. Dempster delivered the trust deed note to defendant and signed her name to the contract, she intended to transfer the title and possession . . . to the defendant, then the title to such property was vested in the defendant and defendant had a legal right to sell the trust deed note. In such case the defendant must be found 'not guilty of the crime of grand theft'." From the evidence heretofore recited and much more which might be quoted, the jury may well have concluded that the prosecuting witness did not intend to part with a $4,400 deed of trust for the sum of $800, and that had the defendant intended in good faith to obtain the same by purchase, she would have been fully advised that she had signed a complete alienation of the title thereto. That she was otherwise advised and that she did not contemplate such a transaction nor foresee the ultimate result above described, was supported by positive testimony of Mrs. Dempster both at the preliminary examination and upon the trial. It became a question for the jury to determine from all of the facts and circumstances before them as to whether or not a theft in either of its phases had been committed.

The appellant advances the novel contention that he was not afforded a trial by jury as guaranteed by the Constitution, for the reason that the jurors may have been divided into three respective groups or fractions, as to possible conclusions from the evidence adduced, to wit, that the defendant obtained the property by false pretenses, that he had committed larceny by trick and device, and that he

had embezzled the securities or proceeds mentioned. Section 484 of the Penal Code provides that one who shall feloniously steal, take or carry away the personal property of another, or knowingly or designedly, by any false or fraudulent representation or pretense, defraud another of money or personal property, or who shall fraudulently appropriate property which has been entrusted to him, is guilty of theft. By section 952 it is provided that in charging an offense it shall be sufficient to charge in substance that the accused has committed some public offense therein specified, and that ''in charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another''. The jury were correctly instructed that if they believed Mrs. Dempster delivered her notes to the defendant to be held by him as collateral security for the loan, and that Wyatt knowing that the same were so delivered to him did with intent to cheat and defraud her of title thereto unlawfully and feloniously sell and dispose thereof, they should return a verdict of guilty as charged; but that it would be sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith. (*Granger* v. *New Jersey Ins. Co.,* 108 Cal. App. 290 [291 Pac. 698].) It will be presumed upon appeal that the jury followed the instructions of the trial court, that their verdict was rendered in accordance with the law as given therein, and that it rests upon facts established by the evidence. Since the evidence and the instructions embrace only an unlawful taking by fraudulently appropriating property fraudulently obtained and entrusted to the defendant by another, it cannot successfully be conjectured as against an apparently unanimous verdict that such presumption might be overcome by an imaginary state of facts which is not apparent. (*People* v. *White,* 5 Cal. App. 329 [90 Pac. 471]; *People* v. *Martinez,* 20 Cal. App. 343 [128 Pac. 952]; *People* v. *Fodera,* 33 Cal. App. 8 [164 Pac. 22]; *People* v. *Christian,* 48 Cal. App. 646 [192 Pac. 182]; *People* v. *Lathrop,* 49 Cal. App. 63 [192 Pac. 722]; *People* v. *Lauman,* 187 Cal. 214 [201 Pac. 459]; *People* v. *Reitz,* 86 Cal. App. 791 [261 Pac. 526]; *People* v. *Gayle,* 202 Cal. 159 [259 Pac. 750].)

Complaint is made of the refusal to give numerous instructions as requested by the defendant, but from what

has been said it is obvious that they did not state the law of the case as defined by the evidence, for the reason that offenses expressly excluded by instructions given were therein assumed; and elements of the offense embraced in other requested instructions were covered by those given. Such requested instructions were not improperly refused.

From the views expressed, it becomes unnecessary to further discuss the remaining minor grounds assigned for reversal, as they are untenable, and there was no error in refusing to grant a new trial.

The judgment and orders from which appeals were taken are affirmed.

Works, P. J., concurred.

Neither Thompson (Ira F.), J., nor Fricke, J., *pro tem.*, participated in the foregoing, for the reason that each was disqualified to act in the cause.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 9, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 24, 1932.