Filed 12/22/15  P. v. Mendez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068724 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF146729) |
| VICTOR MARK MENDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Bernard J. Schwartz, Judge.  Affirmed in part, reversed in part.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

In a criminal prosecution involving two different victims, Victor Mark Mendez was found guilty of 12 counts of aggravated sexual assault by oral copulation against a child under 14 years of age and at least 10 years younger than the defendant (Pen. Code, §§ 269, subd. (a)(4), 288a) (counts 1-12);[1] seven counts of committing a lewd and lascivious act with a child under 14 years of age (§ 288, subd. (a)) (counts 13-14, 17-19, 21-22); and three counts of aggravated sexual assault by rape against a child under 14 years of age and at least 10 years younger than the defendant (§§ 269, subd. (a)(1)) (counts 15-16, 20). The trial court sentenced Mendez to prison for a term of 330 years to life.

Mendez contends (1) the information was improperly amended to allege aggravated sexual assault by rape in count 20 (§ 269, subd. (a)(1)), because no evidence of rape against that victim was presented at the relevant preliminary hearing; (2) the trial court prejudicially erred in admitting expert testimony about child sexual abuse accommodation syndrome; (3) the trial court erred in imposing consecutive sentences for some of the counts; and (4) the sentence of 330 years to life constitutes cruel and unusual punishment. We conclude that Mendez's first argument has merit, and the conviction on count 20 will accordingly be reversed. Mendez's remaining arguments are without merit, and accordingly, in all other respects, we affirm the judgment.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

## II

## FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe 1, who was 19 years old at the time of trial, was nine to 11 years old when she lived with Mendez, who was her mother's boyfriend. Jane Doe 1 testified that when she lived with Mendez, he molested her several times. On the first incident, Mendez put his mouth on Jane Doe 1's breasts when she was nine years old, told Jane Doe 1 to put her hand on his penis, and touched her vagina with his hand. During the next incident, when Jane Doe 1 was still nine years old, Mendez touched her vagina with his hands, and under the pretense of educating her, showed her the "69" position while they were clothed. On subsequent occasions, Mendez engaged in oral copulation with Jane Doe 1 several times, with Jane Doe 1 stating that she performed oral copulation on Mendez a minimum of nine times, and that Mendez performed oral copulation on her a minimum of three times.

Jane Doe 1 also testified that Mendez attempted to put his penis in her vagina at least two times. First, Jane Doe 1 recalled a specific incident that occurred during a period when Mendez had been molesting her on a regular basis, in which Mendez tried to put his penis in her vagina, and it hurt her and felt like stretching. Second, Jane Doe 1 recalled an incident during which Mendez attempted to put his penis in her vagina, which occurred during the same incident as one of the times that Jane Doe 1 orally copulated Mendez.

Jane Doe 1 also described one incident during which Mendez performed oral copulation on her and she also performed oral copulation on Mendez. Jane Doe 1

testified that Mendez would "often" wrestle with her, groping her vagina and breasts and rubbing his penis against her, which happened at least five times. Mendez also performed one act of anal digital penetration on Jane Doe 1.

According to Jane Doe 1, the last incident of attempted molestation occurred when she was 11 years old, during which Mendez told her to take her clothes off, and she started crying, saying she did not want to do it anymore, after which Mendez relented. Shortly thereafter, Jane Doe 1 no longer lived with or had contact with Mendez because her mother passed away, and she went to live with an aunt and uncle. Jane Doe 1 did not disclose the molestation while it was occurring, but disclosed it to her uncle eight months after moving out of Mendez's home.

Jane Doe 2 was Mendez's stepdaughter, who lived with him from approximately age eight to age 12, and was 26 years old at the time of trial. Jane Doe 2 testified that on at least two occasions, Mendez came into her bedroom at night and touched her vagina and breasts. Jane Doe 2 also described one incident of sexual intercourse between her and Mendez when she was 12 years old. Specifically, Mendez gave alcohol to Jane Doe 2, kissed and slow danced with her, and then took her into her bedroom and put his penis in her vagina.[2]

---

2    In 2011, Jane Doe 2 was scheduled to testify as a witness for Mendez at a trial arising out of the offenses against Jane Doe 1, but that trial ended in a mistrial before Jane Doe 2 could testify. Prior to the mistrial, Jane Doe 2 contacted the prosecutor and disclosed that she had been molested by Mendez. The People thereafter charged Mendez with molesting Jane Doe 2. The two cases (concerning Jane Doe 1 and Jane Doe 2) were later consolidated.

4

Jane Doe 2 did not disclose any molestation by Mendez until 2011, when she described incidents in which Mendez touched her vagina. Only a few days before her trial testimony in this case, Jane Doe 2 disclosed the incident of sexual intercourse with Mendez. Based on Jane Doe 2's testimony regarding sexual intercourse, the trial court allowed the People to amend the information during trial to charge Mendez with one count of aggravated sexual assault against a child by rape as to Jane Doe 2. (§ 269, subd. (a)(1).)

A third victim, Jane Doe 3, testified at trial, although Mendez was not charged with any crimes relating to that victim. Jane Doe 3, who was 34 years old at the time of trial, was Mendez's stepdaughter and lived with him when she was approximately nine and 10 years old. Jane Doe 3 testified that when she lived with Mendez, he would get on top of her and "dry hump" her, touch her vagina, and make her touch his penis. She estimated that the molestation occurred three or four times. Jane Doe 3 disclosed the molestation to her fifth grade teacher, and child protective services investigated, but Mendez was not arrested.

Mendez testified at trial and denied molesting Jane Doe 1, Jane Doe 2 or Jane Doe 3, contending that each victim had a motive to falsely accuse him.

With respect to Jane Doe 1, Mendez was found guilty of 12 counts of aggravated sexual assault by oral copulation against a child under 14 years of age and at least 10 years younger than the defendant (§ 269, subd. (a)(4)) (counts 1-12); five counts of committing a lewd and lascivious act with a child under 14 years of age (§ 288, subd. (a)) (counts 13-14, 17-19); and two counts of aggravated sexual assault by rape against a

child under 14 years of age and at least 10 years younger than the defendant (§ 269, subd. (a)(1)) (counts 15-16).  With respect to Jane Doe 2, Mendez was found guilty of two counts of committing a lewd and lascivious act with a child under 14 years of age (§ 288, subd. (a)) (counts 21-22); and one count of aggravated sexual assault by rape against a child under 14 years of age and at least 10 years younger than the defendant (§ 269, subd. (a)(1)) (count 20).

The trial court sentenced Mendez to prison for 330 years to life, consisting of 22 consecutive terms of 15 years to life on each of the counts on which Mendez was convicted.

## II

## DISCUSSION

A.  *The Trial Court Erred in Permitting the People to Amend the Information to Allege Aggravated Sexual Assault by Rape Against a Child as to Jane Doe 2*

We first consider Mendez's contention that count 20 of the information was improperly amended to charge him with committing aggravated sexual assault by rape against a child as to Jane Doe 2.  (§ 269, subd. (a)(1).)

In August 2011, the original information that charged Mendez with the molestation of Jane Doe 2 alleged four counts of lewd and lascivious acts.  (§ 288, subd. (a).)  At the preliminary hearing on those allegations in 2011, the investigating detective testified that Jane Doe 2 had disclosed to him that on three or four occasions when she was 10 or 11 years old, Mendez touched her vagina with his hand.  At the

6

preliminary hearing, the People dismissed one of the four counts, and the trial court held Mendez to answer on three counts of lewd and lascivious acts against Jane Doe 2.

During trial in 2013, shortly before Jane Doe 2 was scheduled to testify, she disclosed to the prosecutor that Mendez also had sexual intercourse with her as part of the molestation. Jane Doe 2 thereafter testified at trial to the one instance of sexual intercourse with Mendez that occurred when she was 12 years old.

During the middle of the defense case at trial, the People moved to amend count 20 of the information to substitute a charge of aggravated sexual assault of a child by rape as to Jane Doe 2 for the previous charge of a lewd and lascivious act as to Jane Doe 2. (§ 288, subd. (a).) Over defense counsel's objection, the trial court granted the motion to amend the information, and the People thereafter filed an amended information as to count 20.

Mendez argues that the trial court violated section 1009 and infringed his right to due process by permitting the People to amend the information to allege in count 20 that he committed aggravated sexual assault of a child by rape as to Jane Doe 2, when there was no evidence of that offense presented at the preliminary hearing. The Attorney General concedes that Mendez's argument has merit. As we will explain, we agree with the parties.

Section 1009 provides in relevant part that "[a]n indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination." Based on this provision, "[t]he general framework within which criminal pleadings are amended is

7

statutorily derived and has remained constant since 1911. [Citations.] Section 1009 authorizes amendment of an information at any stage of the proceedings provided the amendment does not change the offense charged in the original information to one not shown by the evidence taken at the preliminary examination." (*People v. Winters* (1990) 221 Cal.App.3d 997, 1005 (*Winters*).)

The statutory rule in section 1009 is based on constitutional requirements of due process. (*People v. Pitts* (1990) 223 Cal.App.3d 606, 904 (*Pitts*) ["section 1009 protects a defendant's right to due process"].) "Due process requires that 'an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.] Thus, it is the rule that 'a defendant may not be prosecuted for an offense not shown by the evidence at the preliminary hearing or arising out of the transaction upon which the commitment was based.' " (*People v. Graff* (2009) 170 Cal.App.4th 345, 360 (*Graff*).) "Where . . . the particulars are *not* shown by the preliminary hearing transcript, the defendant is *not* on notice in such a way that he has the opportunity to prepare a meaningful defense." (*Pitts*, at p. 905.) "[A] preliminary hearing transcript affording notice of the time, place and circumstances of charged offenses ' "is the touchstone of due process notice to a defendant." ' " (*Id*. at p. 908.)

Further, section 1009 is based on article I, section 14 of the California Constitution, which provides in pertinent part: "Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information." "Our Constitution thus requires that 'one may not be prosecuted in the

8

absence of a prior determination of a magistrate or grand jury that such action is justified' " and " '[b]efore any accused person can be called upon to defend himself on any charge prosecuted by information, he is entitled to a preliminary examination upon said charge, and the judgment of the magistrate before whom such examination is held as to whether the crime for which it is sought to prosecute him has been committed, and whether there is sufficient cause to believe him guilty thereof. These proceedings are essential to confer jurisdiction upon the court before whom he is placed on trial.' " (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165 (*Burnett*).)

"Many cases illustrate the rule that a defendant may not be prosecuted for an offense not shown by the evidence at the preliminary hearing . . . ." (*Burnett*, *supra*, 71 Cal.App.4th at pp. 165-167, citing *People v. Fyfe* (1929) 102 Cal.App. 549, 553, 555; *People v. Kellin* (1962) 209 Cal.App.2d 574, 576; *Winters*, *supra*, 221 Cal.App.3d at p. 1007; *Pitts*, *supra*, 223 Cal.App.3d at pp. 903-908; *Levy v. People* (1973) 31 Cal.App.3d 427; and *People v. Firestine* (1968) 268 Cal.App.2d 533.) As relevant here, this case law includes the situation in which a defendant is accused of molesting a child but is convicted at trial of certain acts of molestation that were not described during the preliminary hearing. (*Pitts*, at pp. 903-908.)

Here, the evidence at the preliminary hearing did not include any act of sexual intercourse between Mendez and Jane Doe 2 generally, and no suggestion of any specific incident in which Mendez gave alcohol to Jane Doe 2 and proceeded to have sexual contact with Jane Doe 2, as she described at trial. Instead, the evidence at the preliminary hearing concerning Jane Doe 2 was limited to three or four incidents of Mendez touching

9

the vagina of Jane Doe 2 at night in her bedroom when she was sleeping. Therefore, the trial court improperly allowed the People to amend count 20 of the information to include an allegation of aggravated sexual assault of a child by rape because that offense was not described at the preliminary hearing.

When an information is improperly amended to allege a count that is not supported by evidence presented at the preliminary hearing, the proper remedy is to reverse the conviction on that count. (*Graff*, *supra*, 170 Cal.App.4th at p. 362 ["[E]ven where the prosecution complies with the necessary procedures [to seek amendment of an information] and no specific prejudice is shown, appellate courts are compelled to reverse convictions where substantial evidence was presented at trial that did not correspond to the charges established at the preliminary hearing."].)[3] Accordingly, we reverse the conviction on count 20.

---

[3] Case law has expressly declined to resolve whether an error in convicting a defendant on a count in an amended information not supported by the evidence at the preliminary hearing is a structural error, requiring reversal per se, or is subject to harmless error review. (*Graff*, *supra*, 170 Cal.App.4th at p. 368, fn. 18; *People v. Dominguez* (2008) 166 Cal.App.4th 858, 870.) As those cases recognized, in an exceptional circumstance, if a harmless error analysis applies, reversal may not be required if " 'a valid ground for the verdict remains' " (*Graff*, at p. 368, fn. 18) or "other parts of the verdict show that the jury found defendant guilty on a proper theory" (*Dominquez*, at p. 870). However, both *Dominguez* and *Graff* concluded that regardless of whether the error was structural or subject to harmless error analysis, reversal was required because there was no valid alternative basis for the verdict in those cases. (*Graff*, at p. 368, fn. 18; *Dominquez*, at p. 870.) We reach the same conclusion here, and thus need not decide whether the error is structural or is subject to harmless error review. Specifically, the Attorney General makes no attempt to argue that the error in this case was harmless, and we perceive no basis for that conclusion. Aside from the improper amendment of count 20 in the information, there was no basis for the conviction of aggravated sexual assault of a child by rape as to Jane Doe 2. (See *Graff*, at p. 368 [error

B.      *The Trial Court Did Not Err in Admitting Evidence of Child Sexual Abuse Accommodation Syndrome*

Over defense counsel's objection, psychologist Jody Ward testified at trial for the People as an expert witness on child sexual abuse accommodation syndrome (CSAAS). As Ward explained, CSAAS is "a pattern of behaviors that many children exhibit who have been sexually abused."  Specifically, CSAAS "helps us . . . to understand why children respond to sexual abuse in the way they do," and was developed based on observations of behaviors by victims of child sexual abuse by a number of professionals over a period of time.  As Ward explained, the five facets of CSAAS are secrecy, helplessness, entrapment and accommodation, delayed unconvincing disclosure, and recantation or retraction.  According to Ward, CSAAS is sometimes helpful in understanding "why children don't disclose sexual abuse for long periods of time" and why children will go along with the sexual abuse.[4]

Citing the federal constitutional right to due process, right to present a defense, and right to a fair trial, Mendez contends that "CSAAS evidence should be held inadmissible in California for all purposes."  Mendez contends that CSAAS evidence is

_____

was prejudicial because there was no basis to conclude that the verdict on the challenged counts "was based on properly prosecuted charges"].)

[4]      Ward testified that she knew nothing about the particular facts of Mendez's case. Further, the jury was instructed with CALCRIM No. 1193 as follows:  "You have heard testimony from [Ward] regarding [CSAAS].  [Ward's] testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him.  You may consider this evidence only in deciding whether or not [Jane Doe 1] and/or [Jane Doe 2's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of their testimony."

11

"an invariably one-sided and guilt-directed form of evidence," and that we should follow the rule in "Pennsylvania, Kentucky, and Tennessee" where, purportedly, "CSAAS evidence is inadmissible for all purposes."

In arguing that CSAAS evidence should be excluded for all purposes, Mendez is presenting an argument that has already been thoroughly considered and rejected by existing case law. Numerous California courts have held that CSAAS evidence is admissible to disabuse jurors of commonly held misconceptions about child sexual abuse. (See, e.g., *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744-1745 (*Patino*); *People v. Housley* (1992) 6 Cal.App.4th 947, 955-956; *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1383-1384; *People v. Harlan* (1990) 222 Cal.App.3d 439, 449-450; *People v. Stark* (1989) 213 Cal.App.3d 107, 116-117; *People v. Bowker* (1988) 203 Cal.App.3d 385, 393-394.) Significantly, our Supreme Court has cited this case law with approval, stating that in cases of alleged child sexual abuse, "expert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident — e.g., a delay in reporting — is inconsistent with his or her testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior. [para.] The great majority of courts approve such expert rebuttal testimony.' " (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301, fn. omitted [discussing the admissibility of CSAAS evidence in the course of ruling on the

12

admissibility of expert testimony about the failure of the *parents* of a child victim to report molestation].)[5]  More recently, in *People v. Brown* (2004) 33 Cal.4th 892, 906-907, our Supreme Court stated that expert testimony on CSAAS was similar to expert testimony on the behavior of domestic violence victims and, on that basis among others, concluded that the expert testimony on the behavior of domestic violence victims was admissible in cases involving domestic violence.

Further, case law has specifically rejected the argument presented by Mendez here, namely that the admission of CSAAS evidence violates a defendant's right to due process.  (*Patino*, *supra*, 26 Cal.App.4th at p. 1747 [observing that "the United States Supreme Court has held the admission of relevant evidence of the battered child syndrome does not violate the due process clause of the Fourteenth Amendment," and that "[b]attered child syndrome evidence is analogous to CSAAS evidence"].)  We see no reason to depart from that authority.

Relying on case law in three other states, Mendez argues that the California position on CSAAS evidence should be reexamined.  (*Commonwealth v. Dunkle* (Pa. 1992) 602 A.2d 830, 838; *Newkirk v. Commonwealth* (Ky. 1996) 937 S.W.2d 690, 691-694; *State v. Bolin* (Tenn. 1996) 922 S.W.2d 870, 872-874.)  We decline to do so.  To the

---

[5]     Because Mendez's contention is that CSAAS evidence should be inadmissible for all purposes, he does not argue that the evidence was admitted in violation of the applicable case law *limiting* admissibility for the purpose of disabusing jurors of any misconceptions about child sexual abuse.  Any such challenge would be without merit in any event.  The record is clear that the People offered Ward's testimony to dispel any misconception arising from a child victim's delay in reporting sexual abuse, as was the case with both Jane Doe 1 and Jane Doe 2, and not to establish that abuse occurred.

extent our Supreme Court has approved the admissibility of CSAAS evidence to rebut misconceptions about the behavior of child sexual abuse victims, we are required to follow that precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

C.      *Mendez's Challenges to His Sentence Lack Merit*

In two separate arguments, Mendez challenges his sentence for (1) the five counts of lewd and lascivious acts against Jane Doe 1 (§ 288, subd. (a)) (counts 13-14, 17-19); and (2) the 12 counts of aggravated sexual assault of a child by oral copulation against Jane Doe 1 (§ 269, subd. (a)(4)) (counts 1-12). We consider each category in turn.

1.      *Lewd Act Counts Committed Against Jane Doe 1*

For the five counts of lewd acts perpetrated on Jane Doe 1, Mendez was sentenced to five consecutive terms of 15 years to life under the "One Strike" law (§ 667.61).[6] The molestation of Jane Doe 1 occurred from approximately 2002 to 2005. The parties do not dispute that pursuant to ex post facto principles (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9), the version of the One Strike law that existed at the time of the crimes is the version that controls the sentence to which Mendez could be subjected. (*Miller v. Florida* (1987) 482 U.S. 423, 435; *People v. Delgado* (2006) 140 Cal.App.4th 1157, 1167-1171.)

---

[6]     The One Strike law applied to the lewd act counts because of the jury's true finding that Mendez committed a specific offense against more than one victim. (§ 667.61, subd. (a).)

As Mendez points out, at the time he committed the lewd acts, the One Strike law provided that the applicable prison term "shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion." (§ 667.61, former subd. (g).) Our Supreme Court interpreted the phrase "during a single occasion" in that version of the One Strike law to mean the offenses "were committed in close temporal and spatial proximity." (*People v. Jones* (2001) 25 Cal.4th 98, 107 (*Jones*).) Applying that definition, our Supreme Court indicated that "a sequence of sexual assaults by defendant against one victim that occurred during an uninterrupted time frame and in a single location" should be determined to have occurred on a single occasion within the meaning of the statute. (*Id.* at pp. 101, 107 [sexual assaults were committed on a single occasion when the defendant performed numerous sex acts on the victim in a car over the span of at least one and a half hours].)

In 2006, after the crimes at issue here were committed, the Legislature amended the One Strike law to delete section 667.61, subdivision (g) as it formerly appeared and to insert subdivision (i), which in relevant part provides that for the applicable offenses, "the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes . . . involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." (§ 667.61, subd. (i); Stats. 2006, ch. 337, § 33.) In turn, section 667.6, subdivision (d) defines "separate occasions" as follows: "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to

15

reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)

Focusing on certain comments that the trial court made during sentencing, Mendez contends that in sentencing him for the five lewd act counts against Jane Doe 1, the trial court improperly relied on the current version of the One Strike law, rather than the version in effect at the time the crimes were committed. Mendez points to the following statement by the trial court: "In addition, the court has considered any potential [section] 654 issues. However, it appears to the court that each of the offenses were committed upon different victims on different dates. And therefore, because of that, and the defendant's reasonable opportunity to reflect upon his behavior, the court does not believe that [section] 654 in any way, shape, or form applies in this case, mandating therefore — or at least indicating to the court that it would be consistent with consecutive terms."

We reject Mendez's argument because, in making the comments quoted above, the trial court said nothing to indicate that it was applying the current version of the One Strike law rather than the version in effect at the time Mendez committed the crimes. The trial court mentioned that Mendez had a "reasonable opportunity to reflect upon his behavior," and the current version of the One Strike law also focuses on that issue to determine whether consecutive sentences are mandatory (§ 667.61, subd. (i), incorporating § 667.6, subd. (d)). But there is no reason to believe that by using this

16

language, the trial court was referring to the current version of the One Strike law and analyzing whether it was required to impose consecutive sentences for the lewd act counts. On the contrary, the trial court expressly stated that it was discussing the applicability of section 654, which requires a trial court to stay a sentence on a count based on the same act or omission punished in another count. Indeed, the question of whether a defendant had a reasonable opportunity to reflect upon his behavior is relevant to an analysis under section 654. (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935 [in § 654 analysis it is relevant that offenses "are temporally separated in such a way as to afford the defendant opportunity to reflect"]; *People v. Louie* (2012) 203 Cal.App.4th 388, 399 [same]; *People v. Felix* (2001) 92 Cal.App.4th 905, 915 [for purpose of § 654, "multiple crimes are not one transaction where the defendant had a chance to reflect between offenses"].) Therefore, as we read the trial court's comments, it was focusing on whether Mendez had an opportunity to reflect as part of its analysis under section 654.[7]

In the absence of any indication to the contrary in the trial court's statements at sentencing, we must presume that the trial court understood and applied the proper sentencing provisions in this case. (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913 [" 'in the absence of any contrary evidence, we are entitled to presume that the trial court

---

[7] In addition, the trial court's final comment that its determination regarding the inapplicability of section 654 "would be consistent with consecutive terms" likely refers to the trial court's view on whether it could impose consecutive sentences once it determined that section 654 was inapplicable. However, it cannot reasonably be understood, as Mendez interprets it, as an indication that the trial court believed the current version of the One Strike law applied to require mandatory consecutive sentences.

17

. . . properly followed established law' "].)  Presuming the trial court applied the provisions of the One Strike law in effect when Mendez committed the lewd acts against Jane Doe 1, the sentence imposed for those counts is supported by the facts presented at trial.  Under the applicable version of the One Strike law, the trial court was required to impose only a single prison term "for any offense or offenses committed against a single victim during a single occasion" (§ 667.61, former subd. (g)), which *Jones* defined as offenses "committed in close temporal and spatial proximity."  (*Jones*, *supra*, 25 Cal.4th at p. 107.)  Here, Jane Doe 1 testified that Mendez would "often" wrestle with her, groping her vagina and breasts and rubbing his penis against her, which happened at least five times.  In addition to the multiple occasions of wrestling, Jane Doe 1 described other lewd acts on different occasions, including an occasion when Mendez committed digital anal penetration, an occasion when Mendez licked her breasts, and an occasion when Mendez touched her vagina.  Based on this testimony, Mendez committed lewd acts against Jane Doe 1 at least five times on five different occasions that were not close in temporal and spatial proximity.  That evidence fully supports the trial court's imposition of separate prison terms for each of the lewd act counts under the version of the One Strike law in effect at the time the crimes were committed.  (§ 667.61, former subd. (g).)[8]

---

[8]    Mendez argues that to the extent defense counsel forfeited Mendez's appellate arguments that the trial court applied the wrong version of the One Strike law, defense counsel provided ineffective assistance.  Specifically, Mendez argues, "Counsel was ineffective in failing to correct the constitutionally invalid test the court used to sentence appellant to consecutive terms on the 5 lewd acts . . . ."  We need not, and do not, reach this argument, as we have rejected Mendez's appellate argument on the merits rather than by concluding that the argument is forfeited.

18

Mendez also contends that the trial court did not understand that it had the discretion on the lewd act counts to choose to make the sentences run concurrently, and that we should remand this matter for the trial court to properly exercise its discretion. We find no support in the record for Mendez's argument. The trial court made no statement suggesting that it believed it was *required* to impose consecutive sentences for each of the lewd act counts, and there is no indication that the trial court was doing anything other than exercising its discretion to impose consecutive sentences as to the lewd act counts.

2. *Aggravated Sexual Assault of a Child by Oral Copulation in Counts 1 Through 12*

In counts 1 through 12, Mendez was convicted of 12 counts of aggravated sexual assault of a child by oral copulation (§ 269, subd. (a)(4)), with Jane Doe 1 as the victim, and was sentenced to 12 consecutive prison terms of 15 years to life.

In Mendez's supplemental letter brief dated June 15, 2015, which amended the original opening brief, Mendez argued that under the former version of the One Strike law as it existed prior to 2006 (§ 667.61, former subd. (g)), *separate terms* of 15 years to life should not have been *imposed* for some of the violations of section 269, subdivision (a)(4) because some of those counts were committed on a single occasion.

For this argument, Mendez relied on the provision in the former One Strike law, which, as we have explained, stated that a prison term under the One Strike law "shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion" (§ 667.61, former subd. (g)), and which our Supreme

19

Court interpreted to mean that separate prison terms could not be imposed for the offenses "committed in close temporal and spatial proximity." (*Jones*, *supra*, 25 Cal.4th at p. 107.)[9] Summarizing the issue presented as "how many One Strike sentences could the court *impose* on counts 1 through 12 when the correct close temporal special proximity test is used" (italics added), Mendez argued that some of his oral copulations of Jane Doe 1 could have occurred on the same occasion when Jane Doe 1 orally copulated

---

[9] After reviewing Mendez's argument that separate prison terms should not have been imposed for some of the section 269 convictions, we asked the parties to submit supplemental letter briefs addressing why the One Strike law had any relevance to the issue. Mendez's response did not directly address the issue we specified. Instead of discussing whether separate prison terms should have been imposed for each of counts 1 through 12, Mendez briefed the completely separate issue of whether, once imposed, the prison terms for counts 1 through 12 were *required to be served consecutively*, and whether we should remand to the trial court with directions for it to consider whether to order Mendez to serve the prison terms in counts 1 through 12 concurrently rather than consecutively. Mendez's entire discussion is inapposite because the trial court did not indicate that it believed the imposition of consecutive sentences on counts 1 through 12 was *mandatory* rather than discretionary. Indeed, in explaining its sentencing choices, the trial court stated that "while I certainly cannot return the damage or innocence to the victims in this case, the court can and will sentence you to a sentence that will prevent you from ever being able to be around or touch a young child again." Therefore, we need not resolve Mendez's specific statutory arguments about whether *mandatory* consecutive sentencing was required in this case under the One Strike law or section 667.6, subdivision (d), as there is no indication that the trial court imposed sentence based on that understanding rather than based on its discretion to impose a sentence that would keep Mendez imprisoned for as long as possible. We note also that as part of his supplementary response, Mendez argues that the trial court erred in not fully setting forth its reasons for imposing consecutive sentences, as it was required to do under the applicable rule of court. (Cal. Rules of Court, rule 4.406 (b)(5).) However, this argument is forfeited because an argument that the trial court failed to articulate its discretionary sentencing choices may not be raised for the first time on appeal. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751 ["A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial."].)

him.  Indeed, as the Attorney General acknowledges, and as the record confirms, Jane Doe 1 testified at trial that during one molestation incident, both types of oral copulation occurred.

We reject Mendez's argument that separate prison terms should not have been imposed for some of counts 1 through 12 that may have occurred on the same occasion, as the provisions of the One Strike law are not necessary to justify the imposition of 15-year-to-life sentences for each of the convictions in counts 1 through 12.  Mendez was convicted in counts 1 through 12 under section 269, subdivision (a), which *independently of the One Strike law*, requires the imposition of a 15-year-to-life sentence for each conviction of aggravated sexual assault under that section.  Specifically, as it existed prior to 2006, section 269, subdivision (b) stated, as it does now, that "[a]ny person who violates this section is guilty of a felony and shall be punished by imprisonment in the state prison for 15 years to life."  Because this statutory provision authorizes the imposition of separate 15-year-to-life terms for each violation of section 269 in counts 1 through 12, it is not relevant whether the imposition of separate prison terms would also have been authorized for those counts under the One Strike law.  We therefore reject Mendez's argument and conclude that the trial court properly imposed separate prison terms for each of counts 1 through 12, regardless of whether some of the acts of oral copulation occurred on the same occasion.[10]

---

10    Mendez argues that defense counsel was ineffective for "failing to alert the court that not all 12 oral copulation counts occurred on separate occasions."  To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance

21

D.        *Mendez's Sentence Is Not Cruel and Unusual Punishment*

Mendez's final contention is that a sentence of 330 years to life in this case constitutes cruel and unusual punishment under the federal and California Constitutions. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.)[11]

A sentence violates the state prohibition against cruel and unusual punishment if " 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " (*People v. Dillon* (1983) 34 Cal.3d 441, 478.)  The federal Constitution " 'forbids only extreme sentences that are "grossly disproportionate" to the crime,' " and "[s]uccessful grossly disproportionate challenges are ' "exceedingly rare" ' and appear only in an ' "extreme" ' case." (*People v. Em* (2009) 171 Cal.App.4th 964, 977.)

Under the state Constitution, "[t]he three techniques often suggested for determining if punishment is cruel and unusual are (1) the nature of the offense and the offender with regard to the degree of danger present to society, (2) comparison of the

---

was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)  Here, as we have explained, the One Strike law does not apply to counts 1 through 12, and accordingly, it was reasonable for defense counsel to chose not to point out that some of the oral copulations occurred on the same occasion.

11        Although Mendez arguably forfeited his cruel and unusual punishment argument because he did not raise the issue in the trial court (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247-1248; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27), we "shall reach the merits under the relevant constitutional standards, in the interest of judicial economy to prevent the inevitable ineffectiveness-of-counsel claim." (*People v. Norman* (2003) 109 Cal.App.4th 221, 230.)

challenged punishment with the punishment prescribed for more serious crimes in the jurisdiction, and (3) comparison of the challenged punishment with punishment for the same offense in other jurisdictions." (*People v. Russell* (2010) 187 Cal.App.4th 981, 993, citing *In re Lynch* (1972) 8 Cal.3d 410, 425-427.) A similar approach is used for a federal constitutional challenge.[12]

"Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.) Our analysis "commences with great deference to the Legislature. Fixing the penalty for crimes is the province of the Legislature, which is in the best position to evaluate the gravity of different crimes and to make judgments among different penological approaches. [Citations.] Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*Id.* at p. 494.)[13]

---

[12]　In *Solem v. Helm* (1983) 463 U.S. 277, the United States Supreme Court set out a three-prong test similar to the one adopted in California to address claims of disproportionate sentences: "[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Id.* at p. 292.) The Court subsequently has clarified that the comparative analyses of the second and third prongs is appropriate only when the analysis of the first prong "leads to an inference of gross disproportionality." (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1005.)

[13]　Mendez argues that we should rely on Justice Mosk's concurring opinion in *People v. Deloza* (1998) 18 Cal.4th 585, 600-601, which expressed the view that a sentence of 111 years in prison "is impossible for a human being to serve, and therefore violates" the cruel and unusual punishments clause of the federal and state constitutions. We reject

Turning first to the nature of the offenses and the offender, we observe that Mendez's crimes were serious and severe offenses. Specifically, Mendez was convicted of 22 counts of various acts of sexual molestation on two victims, over a course of several years, against girls under the age of 14 who were vulnerable and looked to him as a father figure. Faced with similar serious sex offenses, "appellate courts have held that lengthy sentences for multiple sex crimes do not constitute cruel or unusual punishment." (*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 522, 531 [sentence of 129 years for 25 sex offenses against 11-year-old stepdaughter not cruel and unusual punishment]; see *Retanan*, *supra*, 154 Cal.App.4th at pp. 1222, 1231 [135-year-to-life sentence for 16 felony counts and one misdemeanor count based on sexual molestation of four children was not cruel or unusual punishment]; *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1278-1282 [life sentences for sex offenders mandated by California's One Strike law do not constitute cruel and unusual punishment]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1129, 1132, 1134-1136 [375-year-to-life sentence based on 19 felony convictions arising from sexual assaults of three women and recidivism was not cruel or unusual]; *People v. Wallace* (1993) 14 Cal.App.4th 651, 666-667 [283-year sentence upheld for sexual assaults on seven victims].)

With respect to the nature of the offender, Mendez contends that he "exhibited in his life exemplary behavior," as he served in the military and as a police officer, and did

Mendez's reliance on Justice Mosk's concurrence as it has no precedential value and was not joined by the other justices. (See *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231 (*Retanan*) [rejecting appellant's attempt to rely on Justice Mosk's concurrence in *Deloza*].)

24

many positive things for Jane Doe 1 and Jane Doe 2 when they were under his care. However, the specific inquiry with respect to the nature of the offender focuses on "the degree of danger . . . to society." (*In re Lynch*, *supra*, 8 Cal.3d at p. 425.) Mendez's convictions show that he poses a danger to society because of his repeated molestation of vulnerable young girls. Mendez has pointed to nothing in his background as a police officer, a member of the military, or a father figure to young girls that would lead us to believe that he no longer poses a danger of committing sex crimes against children.

Focusing on the inquiry of whether crimes of a more serious nature receive lesser penalties in the same jurisdiction (*In re Lynch*, *supra*, 8 Cal.3d at p. 426), Mendez argues that a "premeditated murderer . . . is going to receive a sentence of 25 years to life plus arguably another 25 years to life for the gun he used," and not a sentence of 330 years to life. Mendez's argument is not persuasive because he is referring to the sentence for a *single count* of first degree murder. Here, Mendez was found guilty of committing 22 different offenses, and each offense was punished by a sentence *less* than that of a single count of first degree murder.[14]

We accordingly conclude that Mendez has not established that his sentence was so disproportionate to his crimes that it constitutes cruel and unusual punishment under either the state or federal Constitutions.

---

[14] Mendez makes no attempt to compare his sentence with the sentences for similar offenses in other jurisdictions, and we accordingly do not address that factor.

25

DISPOSITION

The conviction on count 20 is reversed along with the 15-year-to-life term imposed for that count.  The trial court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.  In all other respects the judgment is affirmed.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.